# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

## NO. 1:05-cv-10226-WGY

---

### JEAN MILES,
### APPELLANT

### v.

### BENEFICIAL MASSACHUSETTS, INC.,
### APPELLEE

---

### BRIEF ON APPEAL
### APPELLANT JEAN MILES

---

Kimberly Breger
BB0# 600925
Legal Services Center of
Harvard Law School
122 Boylston Street
Jamaica Plain, MA  02130


Paul Collier, III
BBO# 092040
Law Offices of Paul Collier
675 Massachusetts Ave.
Cambridge, MA 02139

# TABLE OF CONTENTS

Page

**STATEMENT OF BASIS OF APPELLATE JURISDICTION**............................................1

**STATEMENT OF ISSUES** ............................................................................................1

**APPLICABLE STANDARD OF APPELLATE REVIEW** ...............................................2

**STATEMENT OF THE CASE**.......................................................................................3

**STATEMENT OF FACTS**.............................................................................................5

**SUMMARY OF ARGUMENT** ....................................................................................15

**I.    THE BANKRUPTCY JUDGE ERRED IN HOLDING THAT BENEFICIAL'S
       LOAN WAS NOT AFFECTED BY BENEFICIAL'S RECEIPT AND
       ACCEPTANCE OF PAYMENTS UNDER A CONFIRMED BANKRUPTCY
       PLAN WHICH TREATED THE CLAIM AS UNSECURED** ...........................17**

    **A. Where Beneficial's Claim is "Provided For" by a Confirmed Plan, and
       Beneficial Receives Adequate Notice of its Treatment, *Res Judicata* Acts to
       Extinguish Any Interest Not Preserved by the Plan.........................................19**

    **B. Where Beneficial Was Specifically Named, the Debt Described, and Plan
       Payments Made by the Debtor and Received by Beneficial, Beneficial's
       Claim was "Provided For by the Plan"** .............................................................21**

    **C. The Bankruptcy Court Erred in *Sua Sponte* Concluding that the Plan's
       "Notice" to Beneficial was Constitutionally Defective......................................23**

**II.   THE BANKRUPTCY COURT ERRED IN GRANTING BENEFICIAL
       RELIEF FROM THE AUTOMATIC STAY AS BENEFICIAL FAILED TO
       MEET ITS BURDEN TO PROVE THE VALIDITY OF ITS SECURITY
       INTEREST AND IN LIGHT OF THE ADEQUATE EQUITY CUSHION**........26**

**A. Beneficial's failure to provide mandatory disclosures violated TILA and MCCCDA and Debtor's proper rescission of the loan transaction rendered the existing security interest void** ........................................................................32

**B. Beneficial's  failure to provide Debtor with a Notice of Right to Cancel at least three days prior to the date of the loan transaction violated TILA and MCCCDA and Debtor's proper rescission of the loan transaction rendered the existing security interest void** ....................................................33

**C. Beneficial's  annexing of Debtor's loan note to its Motion for Relief from Stay and motion for post-confirmation relief purporting to be true copies of the loan note in question, but dated three days earlier and referencing a different loan number, also evidenced that Beneficial had no "reasonable likelihood" of proving it held a valid, secured interest in the Debtor's home** ........................................................................................34

**D. The Bankruptcy Court erred in failing to require Beneficial to meet its burden and demonstrate a valid security interest** ...........................................35


**III.    INSOFAR AS THE BANKRUPTCY COURT'S RULINGS RESTED ON ITS DISCRETION, THE COURT ABUSED ITS DISCRETION IN ITS SUMMARY DISMISSAL OF DEBTOR'S MOTION FOR RECONSIDERATION AND LEAVE TO OBJECT TO NEWLY DISCOVERED SECURED PROOF OF CLAIM**..............................................................................................................37


**CONCLUSION** ...............................................................................................................42

iii

# TABLE OF AUTHORITIES

## CASES

In re Allen, 118 F.3d 1209 (8th Cir.1997) ..............................................22

Alpern v. UtiliCorp United, Inc., 84 F.3d.1525 (C.A. 8th. 1996) ...........................37

In re Andersen, 179 F.3d 1253 (10th Cir. 1999) .........................................21, 25

In re Bank of New England Corp., 142 B.R. 584 (D.Mass.1992) ..............................37

Banks v. Sallie Mae Servicing Corp., 299 F.3d 296 (4th Cir. 2002) ..........................2

In re Barbosa, 236 B.R. 540 (Bankr.D.Mass. 1999), aff'd 235 F.3d 31, 41 (1st Cir. 2000) .........20

In re Barton Industries, 104 F.3d 1241 (10th Cir. 1997) ................15, 23, 24, 25, 25, 41

In re Basham, 167 B.R. 903 (Bkrtcy. W.D. Mo, 1994) .....................................26

Begala v. PNC Bank, Ohio, Nat. Association, 163 F.3d 948 (6th Cir. 1998) .................29

In re BeMac Transport Co., Inc., 83 F.3d 1020 (8th Cir. 1996) .............................21

Boaz v. Mutual Life Ins. Co. of New York, 146 F.2d 321 (8th Cir. 1944) ...................37

In re Botelho, 195 B.R. 558 (Bankr. D. Mass. 1996) ................................16, 31, 33

Browder v. Director, Department of Corrections of Illinois, 434 U.S. 257 (1978) .............2

In re Burgess, 163 B.R. 726 (Bkrtcy. M. D. Pa. 1993) ....................................23

In re Busch, 294 B.R. 137 (B.A.P. 10th Cir. 2003) .....................................15, 35

In re Calore Express, 288 F3d 22 (1st Cir. 2002) ......................................16, 28

In re Carvalho, 335 F.3d 45 (1st Cir. 2003) ............................................20

Cen-Pen Corp. v. Hanson, 58 F.3d 89 (4th Cir. 1995) ....................................21

Cerqueria v. Cerqueria, 828 F. 2d. 863 (1st Cir. 1988) ..................................40

Congress Fin. Corp. v. Shepard Clothing Company, 280 B.R. 786 (D.Mass. 2002) ..............1

In re Davis, 11 B.R. 680 (Bankr. E.D. Pa. 1981) ........................................36

In re DiNova, 212 B.R. 437 (B.A.P. 2 Cir. l997) .....................................17, 41

Dwyer v. Barco Auto Leasing Corp., 903 F. Supp. 205 (D. Mass. 1995) ....................29

EnvisioNet Computer Services, Inc. v. ECS Funding LLC, 288 B.R. 163 (D.Me. 2002) ..........39

In re E-Z Serve Convenience Stores, Inc., 318 B.R. 631 (M.D.N.C. 2004) ...................3

Fidler v. Central Coop. Bank, 226 B.R. 734 (Bankr. D. Mass. 1998) .......................31

Fili v. Factors Funding Co. (In re Fili), 257 B.R. 370 (1st Cir. BAP 2001) ..................15, 20, 21

Fluehmann v. Assocs. Fin. Servs., 2002 WL 500564, (D. Mass. 2002) .......................31

Gellert v. Vale Mills Corp., 55 B.R. 970 (D.N.H. 1985) ..................................29

Grant v. Imperial Motors, 539 F.2d 506 (5th Cir. 1976) ..................................30

In Matter of Gregory, 705 F.2d 1118 (9th Cir. 1983) ..............................15, 22, 23, 25

Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26 (1st Cir. 1994) .......................15, 27, 28

Grey v. Federated Group, Inc., 107 F.3d 730 (9th Cir.1997) ..............................2

Harmon v. United States, 101 F.3d 574 (8th Cir. 1996) ...............................15, 25

In re Harnish, 224 B.R. 91 (Bankr.N.D.Iowa 1998) ...................................23, 26

In re Harvey, 213 F.3d 318 (7th Cir. 2000) .......................................15, 21, 25

In re Heath, 79 B.R. 616, 619 (Bankr. E.D. Pa. 1987) ...................................36

In re Hildebrandt, 320 B.R. 40, 43 (1st Cir. BAP.2005) ..................................2

Hollins v. Dept. of Corrections, 191 F.3d 1324 (11th Cir.1999) ...........................39

Household Fin. Corp. v. Adams, 27 B.R. 582 (D. Del. 1983) .............................36

iv

In re Lambeth Corp., 227 B.R. 1 (1st Cir. BAP 1998) ...................................................2

In Re Lee, 11 B.R. 84 (Bkrtcy. E.D. Pa.1981)................................................................16, 35

Lush v. Terri and Ruth F/V, 309 F.Supp.2d 131 (D.Me., 2004) ..................................39

Mayo v. Key Financial Services, Inc., 678 N.E.2d 1311 (Mass. 1997) .....................30, 31

McKinley v. Aframe Lines, 834 F. Supp. 510 (D. Mass. 1993) ...................................40

Mullane v. Central Hanover Bank & Trust, 339 U.S. 306 (1950) ..............................17

In re Myers, 175 B.R. 122 (D. Mass 1994) ...................................................................32

Osterneck v. Ernst & Whinney, 489 U.S. 169 (1989) ...................................................39

In re Pardee, 218 B.R. 916 (9th Cir.BAP 1998) ........................................................2, 20, 21

In re Penrod, 50 F.3d 459 (7th Cir. 1995) .................................................15, 20, 21, 22, 24

Pioneer Investment Services Company v. Brunswick Associates Limited Partnership,
507 U.S. 380 (1993) ........................................................................................................37

Porter v. Porter, 961 F.2d 1066 (3rd Cir. 1992) ........................................................16, 33

Purtle v. Eldridge Auto Sales, Inc., 91 F.3d 797 (6th Cir. 1996) cert. denied,
502 U.S. 1252 (1997) ...................................................................................................29, 30

Rivera v. M/T Fossarina, 840 F.2d 152 (1st Cir.1988) ..............................................37

In re Rodrigues, 278 B.R. 683 (Bkrtcy D.R.I. 2002) ..................................................29, 30, 32

Rosenbaum v. Dutton, 203 F. 838 (8th Cir. 1913) ......................................................2

In re Saco Local Dev. Corp., 711 F.2d 441 (1st Cir. 1983) ........................................1

Shepard v. Fin. Assocs., 316 N.E.2d 597 (Mass. 1974) ...............................................30

Smith v. Fid. Cons. Disc. Co., 898 F.2d 896 (3d Cir. 1988) ........................................30

In re Soares, 107 F.3d 969 (1st Cir. 1997) .................................................................17

In re Spartan Mills, 112 F.3d 1251 (4th Cir.1997) ...................................................25

Stoll v. Gottlieb, 305 U.S. 165 (1938) ...........................................................................20

In re Szostek, 886 F.2d 1405 (3rd Cir. 1989) ...............................................................25

In re Sun Pipe Line Co., 831 F.2d 22 (1st Cir.1987) ...................................................2

In re Tardugno, 241 B.R. 777 (1st Cir. BAP 1999) ......................................................2, 3

In re Tally Well Service, Inc., 45 B.R. 149 (E.D.Mich.1984) .......................................28

Tringali v. Hathaway Machinery Co., Inc., 796 F.2d 553 (1st Cir. 1986) ...............1

In Re Trius Corp., 47 B.R. 3 (Bkrtcy. D.S.C. 1984)....................................................16, 35

United Cos. Fin. Corp. v. Brantley, 6 B.R. 178 (Bkrtcy. N.D.Fla.1980) ...................28

U.S. v. Heller, 957 F.2d 26 (1st Cir. 1992) ...................................................................39

In re Vanasen, 81 B.R. 59 (Bankr. D. Or. 1987) ..........................................................36

Verge v. U.S. Postal Serv., 965 F. Supp. 112, 119 (D. Mass. 1996) ...........................40

In re W. F. Hurley, Inc. 612 F.2d 392 (8th Cir. 1980) ...............................................2

In re Walker, 128 B.R. 465 (Bankr.D.Idaho 1991) ......................................................20

In re Wang Laboratories, 1996 WL 87050 *5 (D. Mass, 1996) ...................................16, 35

In re Watman, 301 F.3d 3 (1st Cir. 2002)......................................................................2

In re Wedgestone Fin., 152 BR. 786 (Bankr. D. Mass. l993) .......................................37

In re Welch, 1998 WL 773999 *2 (6th Cir., 1998, unpublished) ................................20

Werthen v. Werthen  (In re Werthen), 329 F.3d 269 (1st Cir.2003). ..........................2

In re Whitley, 177 B.R. 142 (Bankr. D. Mass. 1995) ...................................................32

Williams v. Gelt Fin. Corp., 237 B.R. 590 (D. Pa. 1999) ............................................32

Zamarippa v. Cy's Car Sales, 674 F.2d 877 (11th Cir. 1982) .....................................30

## STATUTES

28 U.S.C. §158.................................................................................................................1

11 U.S.C. 362........................................................................................................16, 36

11 U.S.C. §1327....................................................................................................15, 20

15 U.S.C. § 1601, *et seq*. ............................................................................... *passim*

M.G.L.c.140D ................................................................................................... *passim*

## RULES

Fed.Rules Bankr.Proc.Rule 8013...................................................................................2

Fed.Rules Civ.Proc.Rule 59........................................................................................37

## OTHER

Am. Jur. 2d Judgments § 743......................................................................................37

Ron Hutson, Lots & Blocks, Boston Globe, July, 8, 2001, at G1, available at LEXIS, New Libarary Bglobe File ......................................................................................................6

5 LAWRENCE P. KING ET AL., COLLIER ON BANKRUPTCY ¶ 1327.01[1] (15th ed.1990)...........................................................................................20

# STATEMENT OF BASIS OF APPELLATE JURISDICTION

The United States District Courts have jurisdiction to hear appeals from final judgments of the bankruptcy courts pursuant to 28 U.S.C. §158(a)(1); <u>In re Saco Local Dev. Corp.</u>, 711 F.2d 441, 444 (1st Cir. 1983) ("Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case"). An Order granting relief from the automatic stay is a final appealable order. <u>Tringali v. Hathaway Machinery Co., Inc.</u> 796 F.2d 553 (1st Cir. 1986) (finding that the bankruptcy court need do nothing more on the matter of the automatic stay dispositive in determining it to be a final appealable order); <u>Congress Fin. Corp. v. Shepard Clothing Company</u>, 280 B.R. 786, 789 (D.Mass. 2002) ("[a] bankruptcy judge's decision to *grant* relief from the automatic stay is final and appealable.").

# STATEMENT OF ISSUES

1. Did the Bankuptcy Judge err in holding that Beneficial's loan was not affected by Beneficial's receipt and acceptance of payments under a confirmed bankruptcy plan which treated the claim as unsecured?

2. Did the Bankruptcy Court Err in Granting Relief From the Automatic Stay as Beneficial Failed to Meet its Burden to Prove the Validity of its Security Interest and in Light of the Adequate Equity Cushion?

3. Where Beneficial Filed an Inaccurate Proof of Claim Which Was Neither Docketed in the Trial Court's PACER Docket nor in the Trustee's Claim Register, Did the Bankruptcy Court Abuse its Discretion in its Summary Dismissal of Debtor's Motion for Reconsideration and Leave to Object to Newly Discovered Proof of Claim?

1

## APPLICABLE STANDARD OF APPELLATE REVIEW

On appeal, the District Court independently reviews the bankruptcy court's decision, applying de novo review to the court's conclusions of law, including its interpretation of the Bankruptcy Code, and to the legal significance accorded to facts, and reviews its factual determinations for plain error. Fed.Rules Bankr.Proc.Rule 8013; In re Werthen, 329 F.3d 269, 272 (1st Cir.2003); In re Watman, 301 F.3d 3, 6 (1st Cir. 2002); In re Pardee, 218 B.R. 916, 919 (9th Cir.BAP 1998); In re Hildebrandt, 320 B.R. 40, 43 (1st Cir. BAP.2005); See, Grey v. Federated Group, Inc.,107 F.3d 730, 732 (9th Cir.1997).

Generally, the standard for review for the denial of a Motion for Reconsideration is whether the bankruptcy judge abused its discretion in denying the motion. In re Tardugno, 241 B.R. 777, 779 (1st Cir. BAP 1999); See, In re Sun Pipe Line Co., 831 F.2d 22, 25 (1st Cir.1987); In re Lambeth Corp., 227 B.R. 1, 7 (1st Cir. BAP 1998). See, Browder v. Director, Department of Corrections of Illinois, 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978); In re W. F. Hurley, Inc.612 F.2d 392, 395-96 (8th Cir. 1980) (the issue of whether the bankruptcy judge abused his discretion in denying reconsideration remains for the district court to decide in the first instance.) Cf. Rosenbaum v. Dutton, 203 F. 838, 842 (8th Cir. 1913) (district court had improperly affirmed referee's denial of reconsideration; case remanded so that the court could pass upon the merits); See, Banks v. Sallie Mae Servicing Corp., 299 F.3d 296, 300 (4th Cir. 2002) (whether the Bankruptcy Code and Rules required the Debtors to bring an adversary proceeding to discharge the mortgage is a legal question that must be reviewed de novo.)

2

However, this Circuit's Bankruptcy Appellate Panel has held that a bankruptcy court's one word order denying motion for reconsideration, as in the case at bar, foreclosed appellate review and resulted in automatic vacatur and remand. In re Tardugno, 241 B.R. 777, 780 (1st Cir. BAP 1999) ("[j]udicial discretion is necessarily broad--but it is not absolute. Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." *quoting* Independent Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co., 864 F.2d 927, 929 (1st Cir.1988)). Id. at 77.

Moreover, to the extent that a party is not provided with due process, the district court must review the constitutional issue that arises in the motion for reconsideration as a pure question of law subject to de novo review. In re E-Z Serve Convenience Stores, Inc., 318 B.R. 631, 635 (M.D.N.C., 2004).

As each of the Bankruptcy Court's rulings are grounded wholly in a misapplication of law, and as none of the facts are disputed in the record, the appropriate standard of review for each of the claims is de novo.

## STATEMENT OF THE CASE

This is an appeal from two separate Decisions/Orders by Honorable Judge William C. Hillman of the United States Bankruptcy Court, Eastern District of Massachusetts: (1) granting Beneficial Relief from the Automatic Stay and determining that the Debtor's Chapter 13 Plan did not affect the validity of its lien; and (2) denying Debtor's Motion to Reconsider those Orders in light of new evidence.

3

The Debtor filed her Chapter 13 Plan and Schedules listing Beneficial's rescinded mortgage debt as "unsecured", based upon violations of federal and state truth-in-lending statutes. The Plan was confirmed without objection. Because Beneficial had erroneously titled its own proof of claim, and the inaccurate proof of claim had been misfiled – appearing in neither the bankruptcy court's PACER docket or the Trustee's claim docket -- the Debtor filed an unsecured proof of claim on Beneficial's behalf, which Beneficial also failed to object to. Seven months after the confirmation of Debtor's Plan, Beneficial filed a Motion for Relief from Stay on the basis that Debtor was not making post-petition payments pursuant to its alleged security interest. Debtor filed a Memorandum in Opposition arguing that confirmation of the Plan bound the Creditor to its treatment so designated and demonstrating the invalidity of Beneficial's security interest: depriving Beneficial of standing to seek relief from the stay. Beneficial never contested – or even responded to -- the Debtor's "invalid security interest" arguments.

Thereafter, Beneficial filed a Motion for Post-Confirmation Relief to Determine the Validity if Movant's Lien, or Alternatively, for an Order Vacating the Confirmation Order, contending that its lien could only be invalidated by an adversary proceeding: and that, therefore, Beneficial's undisputed failure to challenge the plan's treatment of its claim as "unsecured" was of no legal consequence. Beneficial never asserted that the notice of the plan's treatment of its lien was constitutionally – or otherwise – deficient. Debtor filed a Memorandum in Opposition, asserting Beneficial's failure to object to notice of its unsecured treatment in the Plan, Schedule, or the unsecured proof of claim, concomitant with its acceptance of plan payments as one of the unsecured creditors, barred Beneficial from attacking the plan post-confirmation. Beneficial filed nothing in reply.

4

After a joint hearing on the motions, on November 24, 2004, Honorable Judge Hillman granted Beneficial relief from the automatic stay and found that the plan did not determine the validity of Beneficial's lien. The Court failed to undertake **any** analysis of the underlying claims that the loan was rescinded and that Beneficial, as an unsecured creditor, thus lacked standing to move for such relief. As part of this Decision/Order, Judge Hillman referenced a secured proof of claim apparently filed by Beneficial after confirmation: a proof of claim that Beneficial's counsel had argued – and repeatedly failed to rebut - had never been filed, and which was not recorded in either the Bankruptcy Court's electronic filing system "PACER" or the Trustee's Claims Register.

Based upon this newly discovered evidence, Debtor immediately filed an adversary proceeding and the underlying Motion for Reconsideration. On December 9, 2004, without any opposition from Beneficial and without hearing, Honorable Judge Hillman summarily denied the motion for reconsideration.

## **STATEMENT OF FACTS**

In Spring 2001, Defendant Beneficial Massachusetts Inc. (hereinafter "Beneficial" or "Creditor") solicited Plaintiff Jean Miles (hereinafter "Ms. Miles" or "Debtor"), a single mother of two unsophisticated in financial matters, to refinance the mortgage on her house in Bellingham, Massachusetts.[1] (AP ¶¶ 6-7,24)[2] Beneficial promised that such a refinancing would

---

[1]  These facts, and all of the facts herein, were before the lower court by Affidavit and verification, or by documentary submission; Beneficial has never filed any evidentiary materials disputing them.
[2]  References to the record are cited as follows: Appellant's Adversary Proceeding as Exhibit "A" of Appellant's Motion for Reconsideration (AP); Appellant's Chapter 13 Plan (Plan); Bankruptcy Court's Order Confirming Chapter 13 Plan (Confirm. Order); Bankruptcy Court's computerized CM/ECF Claims Register (PACER); Chapter 13 Trustee's Computerized Claim Report Docket (Trustee Rpt.); Appellant's unsecured proof of claim filed on

5

consolidate all of Ms. Miles' outstanding debt, lower her interest rate, and reduce her monthly

payments. (AP ¶¶ 8,35; A. Opp. MRFS) Based on these promises, Ms. Miles' was induced to

submit a loan application to Beneficial. (AP ¶ 35) Soon after, Beneficial informed Ms. Miles that

she had been approved for the loan, and advised her to discontinue payment of her then-

outstanding mortgage in anticipation of the imminent closing and payoff. (AP ¶¶ 10-11)  Instead

of a prompt closing, however, Beneficial repeatedly delayed the closing: leaving Ms. Miles in

default on her prior mortgage. (AP ¶¶ 14-15)

    Just prior to the July 9, 2001 closing, Beneficial's closing agent informed Ms. Miles that

she was required to pay nearly $20,000 in closing costs for her $223,000 30-year, 10.281 % fixed

rate loan .[3] (AP ¶16)  When she protested these fees, Beneficial's closing agent agreed to reduce

the official closing costs to just under $10,000: 4.25% of the loan's principal amount. (AP ¶17,

42; AP, Ex. A Line 80) Beneficial's closing agent, however, demanded Ms. Miles pay him an

additional $2,000 "under the table" to compensate him for the reduced commission he would

receive as part of the lower fees. (AP ¶18) Because she was in default, Ms. Miles had to go

through with the loan; thus, she understood that the only way to do so would be to tender the

---

behalf of Appellee on April 1, 2004 (Unsecured poc); Appellee's secured proof of claim dated February 6, 2004 (Secured poc); Appellant's Notice of Rescission (Not. Rescission); Appellee's Motion for Relief from the Automatic Stay (MRFS); Appellant's Memorandum in Opposition to Appellee's Motion for Relief from Automatic Stay (A. Opp. MRFS); Appellee's Motion for Post Confirmation Relief to Determine the Validity of Movant's Lien, or Alternatively, for an Order Vacating the Confirmation Order (Post-Confirm); Appellant' Opposition to Motion for Post Confirmation Relief to Determine the Validity of Movant's Lien, or Alternatively, for an Order Vacating the Confirmation Order (A. Opp. Post-Confirm); Honorable Judge Hillman's Order granting Appellee's Motion for Relief from Stay and finding Confirmation of Debtor's Chapter 13 Plan did not affect validity of Appellee's mortgage entered Nov. 24, 2004 (J. Hillman Order); Honorable Judge Hillman's Memorandum of Decision on Appellee's Motion for Relief from Stay and finding Confirmation of Debtor's Chapter 13 Plan did not affect validity of Appellee's mortgage (J. Hillman Memo.); Appellant's Motion for Reconsideration (A. Reconn.); Affidavit in support of Motion for Reconsideration (A. Reconn. Breger Aff.);Honorable Judge Hillman's Order denying motion for Reconsideration entered  Dec. 9, 2004 (J. Hillman's Denial); Transcript of Hearing before Honorable Judge Hillman (Tran.); Notice of Appearance by Appellee's counsel (NOA).

[3]  "The 30-year, fixed-rate mortgage averaged 7.19 percent, with an average 0.9 point, for the week ending July 6." Ron Hutson, Lots & Blocks, Boston Globe, July, 8, 2001, at G1, available at LEXIS, New Libarary Bglobe File.

additional $2,000 demanded payment. (AP ¶19) Ms. Miles, unrepresented at the July 9, 2001

closing, signed the mortgage, the loan note (loan number 521713-532982), and various

documents that the lender's closing agent told her to sign without explanation. (AP ¶¶ 22-3, 26,

AP Ex. A, C; Secured poc, Ex. A) The $2,000 payment to Beneficial's agent was neither

disclosed on any of the official disclosure forms signed at the closing nor included in any

calculations of the loans financial costs. (AP ¶ 42-5; A. Opp. MRFS) As a result of the $2,000

hidden finance charge, the fees amounted to 5.11% of the total loan amount, qualifying it as a

high-cost loan. (AP ¶ 43-4; A. Opp. MRFS).

Following the closing, Ms. Miles learned that Beneficial had fraudulently induced her

into a high-cost loan: with monthly payments appreciably higher than those on her prior

mortgage. In fact her prior monthly mortgage payment, including escrows for taxes and

insurance, was less than $1,600. (AP ¶9) Her new loan with Beneficial required a monthly

payment of almost $ 2,100. (AP ¶27) Upon unexpectedly receiving notice of a tax lien on her

property, Ms. Miles also learned that her loan from Beneficial—unlike her past mortgages—did

not include her real estate taxes. (AP ¶29) She was further dismayed to learn that Beneficial not

only failed to pay off her consumer debt, as promised, but that it had added to her debts an

additional personal loan of $8,000. (AP ¶40; A. Opp. MRFS) As a result of this refinancing, Ms.

Miles received a total disbursement at the closing of $46.97: "in exchange" for thousands of

dollars in increased payments. (AP ¶28; AP Ex. A, Line 1604)

Consequently, Ms. Miles received none of the financial benefits promised as a result of

the refinancing, and instead ended up in a precarious financial position resulting in the threatened

foreclosure of her home. As a result of the much higher mortgage payments and the increased

7

debt obligation, Ms. Miles ultimately defaulted on her loan, and Beneficial scheduled an auction

to foreclose on her home. On October 13, 2003, Ms. Miles filed a Petition in the United States

Bankruptcy Court for the District of Massachusetts (Eastern Division) under Chapter 13 of the

Bankruptcy Code, and Beneficial was stayed from pursuing the foreclosure proceeding pursuant

to the Code's automatic stay provision. (MRFS ¶8)

On November 7, 2003, Miles filed her Chapter 13 plan and various required schedules

with the Bankruptcy Court. In the portion of the plan listing $201,877.82 in "General unsecured

claims," Miles explicitly included a note that "$180,000 is **unsecured claim** alleged owed to

Beneficial Massachusetts, Inc., (First mortgage) which Debtor disputes and plans to file an

adversary proceeding asserting various consumer protection claims including, but not limited to,

violations of TILA, MCCCDA, RESPA, M.G.L 93A." (emphasis added). (Plan) On Schedule F

of the Bankruptcy Court filing, Miles described the Beneficial debt as unsecured and "disputed."

(A. Reconn., Affidavit of Kimberly Breger ¶ 3) The Chapter 13 plan was served upon Beneficial

pursuant to the notice provisions of the Code.[4] (Plan; A. Opp. MFRS; Post-Confirm ¶ 12; J.

Hillman Memo.) The loan with Beneficial was subject to the Federal Truth In Lending Act (15

U.S.C. § 1601, *et seq*.) and the Massachusetts Consumer Credit Cost Disclosure Act (M.G.L. c.

140D). (AP ¶¶ 77-93) On November 17, 2003, Ms. Miles notified Beneficial by Notice of

Rescission that she exercised her still unexpired right of recession, based upon the remedies in

these Acts. (A. Opp. MRFS, Ex. A; Not. Recission)

Despite these notices, Beneficial did not object to Ms. Miles' plan. (Post-Confirm ¶ 13; J.

Hillman Memo.) Therefore, on January 22, 2004, United States Bankruptcy Judge Carol J.

---

[4] In fact, Debtor served the Plan on Beneficial at two different addresses. (Plan-Certificate of Service; Post-Confirm, Ex. C)

Kenner confirmed the plan, as proposed by Ms. Miles: effective December 1, 2003. (Confirm. Order) The plan required Miles to pay $1,078 per month for a period of 36 months in order to fully pay outstanding property taxes and **all** the unsecured creditors  -- **including Beneficial**. The "Summary of Disbursements To Be Made Under the Plan," incorporated into Judge Kenner's order by reference, detailed that the $201,877.82 in unsecured claims "includes the unsecured claim in the amount of $180,000.00 of Beneficial Massachusetts, Inc. for the Debtor's first mortgage which the Debtor disputes and plans to file an adversary proceeding asserting various consumer protection claims including, but not limited to, violations of TILA, MCCCDA, RESPA, and M.G.L 93A." (Confirm. Order) Ms. Miles, therefore, tendered – and subsequently began paying -- the remaining loan proceeds, after rescission, through her Chapter 13 reorganization plan. (Trustee Rpt., Claim #10; A. Reconn. Breger Aff., Ex. B; A. Opp. to Post-Confirm.)

 Not having received any objection to her plan or schedules treating Beneficial's debt as unsecured, and without any reason to believe that Beneficial had filed a claim against Ms. Miles' estate or disputed its treatment in the bankruptcy plan, on April 1, 2004 Ms. Miles provided Beneficial yet another notice that its debt was unsecured: filing a Proof of Claim, on behalf of Beneficial, for an **unsecured** $180,000 debt. (Unsecured poc) While counsel for Beneficial had not yet entered an appearance in Ms. Miles' case, Ms. Miles nonetheless served counsel with this Proof of Claim: providing full and explicit notice and disclosure as to the Plan's treatment of Beneficial's lien as unsecured. (A. Opp. MRFS, Ex. B)

 On or about July 1, 2004, Beneficial's counsel first appeared in Ms. Miles' bankruptcy proceeding. (NOA) On or about July 9, 2004, Beneficial filed a "motion for relief from the

9

automatic stay" acknowledging Ms. Miles' plan confirmation seven months earlier, alleging that it had a security interest in Ms. Miles' property, and arguing that it was not receiving post-petition payments commensurate with its asserted security interest. (MRFS, ¶ 4,6,11) Annexed as Exhibits to Beneficial's motion for relief from stay were copies of the loan note and mortgage allegedly executed by Ms. Miles in favor of the Beneficial. (MRFS, Ex. A, B) Beneficial stated in its motion that these documents were dated and executed on July 9, 2001, the date of the loan documents Ms. Miles likewise received from Beneficial.[5] (MRFS ¶ 3-4). The loan note Beneficial filed in the court below was, however, dated July 13, 2001, with a loan number of #521713-533047: compared to the July 9, 2001 date and 521713-532982 loan number on loan documents signed, executed, and provided to Ms. Miles. [6] (MRFS, Ex. A, B; A.Opp. MRFS, Ex. B; AP ¶ 49)

On or about July 26, 2004, Ms. Miles filed a Motion and Memorandum of Law in Opposition indicating Beneficial's disregard of the Plan, and its subsequent confirmation, bound Beneficial to its terms, and arguing that Beneficial failed to establish sufficient cause for lifting the stay: given the adequate equity cushion. (A. Opp. MRFS) The Memorandum in Opposition additionally challenged the validity of Beneficial's interest in the property, as a result of myriad violations of the federal and state truth-in-lending acts, providing the Court below with specific examples. (A. Opp. MRFS) Annexing as an Exhibit the Notice of Right to Cancel Beneficial provided Ms. Miles, these filings also illustrated Beneficial's use of altered or falsified documents in this loan transaction. (A. Opp. MRFS, Ex. B) Further, as Ms. Miles argued to the

---

[5] The annexed mortgage, itself, reflects the July 9, 2001 date. (MRFS, Ex. B)
[6] This earlier loan date and loan number are included on the copies of all the disclosure documents that Beneficial has provided to Miles' counsel and the July 9, 2001 date is reflected on the mortgage filed with the Norfolk Registry of Deeds.

Court, a Notice of Right to Cancel expiring prior to the loan consummation is a clear violation of TILA and MCCCDA: justifying rescission and invalidation of the security interest. (A. Opp. MRFS pp.8-9)

As reflected in the record below, Beneficial neither filed a Reply Brief to Ms. Miles' Opposition nor in any way asserted the validity of its security interest: despite the violations in the documents Beneficial itself filed and relied upon, and the obvious discrepancy is on the face of the loan documents themselves. On August 17, 2004, as both parties were set to commence oral argument on the motion, Beneficial indicated that it had just filed a "motion for post confirmation relief to determine the validity of movant's lien, or, alternatively, for an order vacating the confirmation order entered in this matter." The Bankruptcy Court continued the hearing on the motion for relief from the automatic stay pending a joint hearing on both motions.

In its second motion, Beneficial essentially argued that its lien passed through the Bankruptcy Court unaffected by Ms. Miles' plan, in light of the fact that she did not file an adversary complaint. (Post-Confirm ¶¶ 17-28) Beneficial admitted that it failed to respond to the plan or plan confirmation, but argued that Ms. Miles' failed to take required steps to void the security interest. (Post-Confirm ¶¶ 13) Beneficial did not, and in fact has never, argued that it did not understand the Plan's treatment of its claim as unsecured, or that it failed to receive proper notice of the plan, the schedules, the confirmation order, the unsecured proof of claim filed on its behalf, or the Notice of Rescission.(Post-Confirm) Beneficial did not rest its argument on due process grounds, but rather on its interpretation of the relevant case law.

Furthermore, Beneficial explicitly represented in its motion that: "**Beneficial did not file a Proof of Claim in this proceeding**." (Post-Confirm ¶ 11) In fact, Beneficial had filed a proof

11

of claim for a $256,720.11 secured debt (including $23,011.71 in arrearage) received by the

Bankruptcy Court on February 18, 2004. (J. Hillman Memo. p. 2, fn.1) Not only did Beneficial

improperly file the proof of claim under the name "Jean Murphy", the Bankruptcy Court's

PACER electronic filing system failed to include the filing in the docket listing for Ms. Miles'

case.[7] (Secured poc; PACER) Beneficial never served Ms. Miles or her counsel with a copy of

this secured proof of claim, and Beneficial's counsel repeatedly stated to the Court and Debtor's

counsel that no proof of claim had been filed by Beneficial. (A. Reconn., Breger Aff. ¶ 7; Post-

Confirm ¶ 11) Again, annexed to Beneficial's Motion for post confirmation relief, was a copy of

a loan note dated July 13, 2001 with loan number #521713-533047. (Post-Confirm, Ex. A, B)[8]

On or about October 8, 2004, Ms. Miles filed her Opposition. Again, reasonably relying

upon affirmative statements by Beneficial's counsel and the absence of any secured proof of

claim filed by Beneficial on the PACER system or the Trustee's Claim Register, Ms. Miles

asserted that Beneficial was estopped from seeking post-confirmation determination of the

validity of its lien. (A. Opp. Post-Confirm; PACER; Trustee Rpt.) Additionally, at this juncture

Beneficial was already accepting funds disbursed by the Chapter 13 Trustee's Office pursuant

solely to the unsecured proof of claim filed by Ms. Miles on Beneficial's behalf. (Trustee Rpt.

Claim #10; A. Reconn. Breger Aff., Ex. B)

Again, Beneficial failed to reply.

On October 8, 2004, Honorable Judge William C. Hillman held a joint hearing on the two

motions. At the hearing, counsel for Beneficial expressly admitted that Beneficial was receiving

money under the plan as an unsecured Creditor. (Tran. p. 4 Lines 9-13)

---

[7] The Bankruptcy Court's PACER electronic filing system likewise failed to docket the proof of claim under either
Jean Murphy or Jean Murphy-Miles.

On November 24, 2004, Honorable Judge Hillman entered an Order granting relief from the stay and holding that the confirmation of Ms. Miles' Chapter 13 plan "did not affect the validity of Beneficial's mortgage." (J. Hillman Order) In Judge Hillman's Memorandum of Decision, associated with that Order, he found Ms. Miles' failure to make postpetition payments on the loan, despite her claims that the loan had been rescinded, served as grounds for lifting the stay and indicated Beneficial could assert "its rights under state law, whatever they may be." (J. Hillman Memo. p. 12)

Neither the Order nor the Memorandum of Decision ever addressed the merits of Ms. Miles' claims that the underlying loan was rescinded as a result of violations under the federal and state truth-in-lending acts. (J. Hillman Memo.) In fact, Judge Hillman stated that he made "no ruling as to the merits" of any underlying substantive law violations, or apparently, of the validity of Beneficial's secured interest (J. Hillman Memo. p.12) Thus, the Bankruptcy Court failed even to address the unrebutted likelihood that Beneficial had no security interest. That is, the Court never required that Beneficial meet its burden to establish its purported security interest: especially disconcerting in light of the presumed higher scrutiny arising from loan documents inconsistent on their face.

In any event, it is undisputed that the first time Ms. Miles had knowledge that Beneficial had filed a secured proof of claim was a footnote in Judge Hillman's "Memorandum of Decision". (J. Hillman Memo. p. 2, fn.1; A. Reconn., Breger Aff. ¶13; Post-Confirm ¶11) Prior to this Decision being rendered, Ms. Miles had never been on notice that such a claim existed. In fact, even after the decision below issued, PACER and the Trustee Claim Register did not reflect a Beneficial Proof of Claim. (PACER; Trustee Rpt.; A. Reconn., Breger Aff. ¶8-9, Ex. A, B)

---

[8] The secured proof of claim likewise references the July 13, 2001 date. (Secured poc)

In light of the newly discovered proof of claim, Ms. Miles immediately filed an adversary proceeding in the Bankruptcy Court against Beneficial seeking rescission and asserting her claims based on the Federal Truth In Lending Act, the Massachusetts Consumer Credit Cost Disclosure Act and regulations on high cost mortgage loans, the Massachusetts Consumer Protection Act, and various claims grounded in common law. [9] (A. Reconn., Ex. A) Immediately thereafter, Ms. Miles filed a motion for reconsideration of Judge Hillman's Order and requested leave to object to the secured proof of claim. (A. Reconn.) In her motion, Ms. Miles explained that she had never been afforded notice that there was a filed secured proof of claim, and in fact, to the contrary had reasonably relied upon PACER and the affirmative representations of Beneficial's counsel, and that her due process rights would be severely impinged if the Court refused to reconsider its Order or, at least, allow her to object to the proof of claim and litigate the underlying case on its merits. (A. Reconn.)

Beneficial filed no opposition. Yet, on December 9, 2004, without hearing, with uncontroverted evidence that the Bankruptcy Court's PACER system failed to reflect the secured proof of claim, and despite the gravity of Ms. Miles' potential loss of her home, the Bankruptcy Court in one word denied her motion for reconsideration and for leave to file an objection to the secured proof of claim. (J. Hillman Denial)

On December 17, 2004, Ms. Miles filed a notice of appeal of both the November 24, 2004 Order and the December 9, 2004 Order.

---

[9] This adversary proceeding (No. 04-01421) is currently pending before Honorable Judge Robert Somma of the United States Bankruptcy Court, Eastern Division.

14

## SUMMARY OF ARGUMENT

Sometimes the clearest errors are the simplest ones.  Here, the Debtor's Plan scheduled the Beneficial debt as "unsecured", described its security interest as "disputed", and the Debtor made payments under this Plan to Beneficial as an unsecured Creditor – payments which Beneficial received, and accepted.  The court below erred in holding that, as a matter of law, Beneficial's debt was not "provided for" by the Plan. 11 U.S.C. §1327, In re Fili, 257 B.R. 370, 373 (1st Cir. B.A.P., 2001); In re Barton Industries, 104 F.3d 1241, 1245 (10th Cir., 1997); In re Penrod, 50 F.3d 459, 462 (7th Cir., 1995). Indeed, Beneficial's receipt of the forced Proof of Claim, its acknowledgment that the Plan treated its claim as unsecured, and the Plan's specific identification of Beneficial's claim and its creditor status as unsecured provided notice which was more than "adequate" in due process terms.  In re Barton, supra; Harmon v. United States, 101 F.3d 574, 584-85 (8th Cir. 1996) ("somewhat confusing" notice adequate); In re Harvey, 213 F.3d 318, 322 (7th Cir. 2000) (creditor must challenge plan confirmation where it claims notice is "vague or ambiguous", and is "…not entitled to stick his head in the sand"); In Matter of Gregory, 705 F.2d 1118, 1123 (9th Cir. 1983) (ambiguous notice "was not constitutionally deficient" because creditor had at least "inquiry notice".)

Similarly, the court below erred granting Beneficial's Motion for Relief from Stay. Beneficial had the burden of proving "a reasonable likelihood" that it held a valid, secured interest in the Debtor's home. Grella v. Salem Five Cent Bank, 42 F3d 26, 33 (1st Cir., 1994). Where as here, the Creditor's own filings revealed facially, invalidating violations of both state and federal law, and the invalidity of Beneficial's asserted secured interest was "clear from the

15

record as a matter of law or from undisputed facts …", then Beneficial lacked "… even a colorable claim (and was) no longer entitled … to move for a lift of the stay". In re Calore Express, 288 F3d 22, 35 (1st Cir. 2002). That is, by filing nothing to establish the reasonable likelihood that it held a valid, enforceable security interest in the Debtor's home, Beneficial wholly failed to meet its burden of proof on its motion to lift stay. In re Wang Laboratories, 1996 WL 87050 *5 (D. Mass, 1996); Accord, 11 U.S.C.A. §362(d)(1)(g); In re Busch, 294 B.R. 137, 141 (10th Cir. BAP 2003) (holding that the moving party bears the burden of showing "cause" exists to lift the stay); In Re Lee, 11 B.R. 84, 84 (Bkrtcy. E.D. Pa.1981); In Re Trius Corp., 47 B.R. 3, 5 (Bkrtcy. D.S.C. 1984).

Here, on affidavit evidence, and from Beneficial's own filings, the law was clear and the facts were undisputed: as Beneficial neither filed contrary factual materials nor disputed the Debtor's legal presentation. Undisputed, the Debtor's filings establish that Beneficial failed to provide lawful Notice of Rescission rights, failed to make required disclosures, and otherwise violated both federal and state laws which entitled the Debtor to rescind – and invalidate – Beneficial's security interest. Porter v. Porter, 961 F.2d 1066, 1077 (3rd Cir. 1992); In Re Botelho, 195 B.R. 558, 568 (Bankr. D. Mass. 1996), *abrogated on other grounds* Beach v. Ocwen Federal Bank 523 U.S. 410, 118 S.Ct. 1408 (1998).

Finally, in light of the state of the record in the Bankruptcy Court, and the undisputed facts that errors of Beneficial and of the Bankruptcy court deprived the Debtor of **any notice** of the filing of the Beneficial's proof of claim, and its assertion of a secured interest, her due process rights were violated by the court below's denial of her Motion for Reconsideration and for Leave to Challenge Proof of Claim: especially in light of the correspondingly undisputed

16

facts that the consequences of these actions – without notice – might well be the loss of the

debtor's home. <u>Mullane v. Central Hanover Bank & Trust,</u> 339 U.S. 306, 314, 94 L. Ed. 865, 70

S Ct. 652 (1950) ("[d]ue process requires notice reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the (claim) and afford them the

opportunity to present their objections…. "[D]eprivation of... property by adjudication (must) be

preceded by notice and opportunity for hearing."; <u>In re DiNova,</u> 212 B.R. 437, 442-5 (2nd Cir.

BAP l997) (due process rights of debtor violated by Bankruptcy court dismissal of action upon

motion of which debtor received neither notice nor opportunity to be heard). These requirements

must be strictly observed when, as in this case, a court proposes to fundamentally alter the

automatic stay, "among the most basic of debtor protections under bankruptcy law." <u>In re Soares</u>,

107 F.3d 969, 975 (1st Cir. 1997).

I.    **THE BANKRUPTCY JUDGE ERRED IN HOLDING THAT BENEFICIAL'S LOAN WAS NOT AFFECTED BY BENEFICIAL'S RECEIPT AND ACCEPTANCE OF PAYMENTS UNDER A CONFIRMED BANKRUPTCY PLAN WHICH TREATED THE CLAIM AS UNSECURED.**

The Debtor's Plan –quoted verbatim below (emphasis in original) -- was clear and

unequivocal in its treatment of Beneficial's debt as an unsecured claim:

> DEBTOR: Jean Miles     SS#: 0█████████
> PLAN PAYMENT:  Debtor to pay monthly:  $1,078.00
>
> **I. SECURED CLAIMS**
>    A.  CLAIMS TO BE PAID THROUGH THE PLAN (INCLUDING ARREARS):

| Creditor | Description of Claim | Amount of Claim |
|---|---|---|
| Bellingham Collector's Office - Real Estate Taxes | Statutory Lien | $7,500.00 |
| Bellingham Collector's Office - Waste Disposal | Statutory Lien | $  352.00 |
| Bellingham Collector's Office - Water/Sewer | Statutory Lien | $  820.00 |
| Total amount of secured claims to be paid through plan: | | $8,672.00 |

17

B.   CLAIMS TO BE PAID DIRECTLY TO CREDITORS (Not through Plan):NONE[10]

**IV.  UNSECURED CLAIMS**

The general unsecured creditors shall receive a dividend of 13% of their allowable claims.

A.  General unsecured claim is:                          $201,877.82*

*180,000 is unsecured claim alleged owed to Beneficial Massachusetts, Inc., (first mortgage) which Debtor disputes and plans to file an adversary proceeding asserting various consumer protection claims including, but not limited to, violations of TILA, MCCCDA, RESPA, M.G.L. 93A.[11]

B.   Undersecured claims arising after lien avoidance/cramdown:  NONE

Total of A and B general unsecured claims:              $201,877.82

C.  Multiply total by percentage of dividend:           $ 26,244.17

**VI.  CALCULATION OF PLAN PAYMENT**

| | | |
|---|---|---|
| A.  Secured Claims (Section I-A total) | $  8,672.00 | |
| D.  General Unsecured Claims (Section IV-C total) | $ 26,244.17 | |
| E.  Separately classified unsecured claims (IV-D total) | $      0.00 | |
| F.  Total of (A) through (E) | | $ 34,916.17 |
| G.  (F) above divided by .90 for total cost of plan | $ 38,795.69 | |
|     Includes Trustee payment of 10% | | |
| H.  (G) above divided by term of plan of: | 36 months | |
| L.  Monthly plan payment rounded up to the nearest dollar | $  1,078.00 | |

In compliance with 11 U.S.C. §1326 (a)(1), unless the court orders otherwise, the Debtor shall commence making the above payment proposed above within 30 days of filing this plan with the Court.

Beneficial admits that this Plan was served timely upon it. (Post-Confirm ¶12; J. Hillman Memo. p.2) Beneficial has never contended that it was confused by, or misunderstood, the Plan's treatment of its debt; to the contrary, Beneficial expressly acknowledged its accurate understanding of the Plan's provisions:

> The Chapter 13 Plan **does not provide for payment of Beneficial's secured claim**.  Instead, it **provides that** Beneficial's claim is unsecured, pending an adversarial proceeding Debtor intends to file…[12]  Beneficial did not file a Proof of Claim in this proceeding…[13]  The payment in the Plan was 13% of the outstanding debt.

---

[10] Had the Plan permitted or required the Debtor to make post-petition mortgage payments to Beneficial, those payments would have to have been set forth here: Part B of the secured Claims provision.

[11] As the court below noted, however disapprovingly, nothing in this provision even suggests that the the treatment of Beneficial's claim as secured or unsecured would await the result of the expected – and now pending - adversary proceeding. (J. Hillman Memo. p. 10).

[12] A timely-filed Adversary Proceeding is now pending in the court below.  Ironically, the Creditor's only response to the filed complaint was to argue that the Bankruptcy Court should decline to consider the Adversary Proceeding. (J. Hillman Memo. p.2-4)

[13] This statement was simply wrong.  (J. Hillman Memo. p.2-4)

18

(Post-Confirm, ¶¶ 9,11,27).  Moreover, Beneficial did not merely understand the Plan's treatment of its claims; rather, **the Debtor made, and Beneficial accepted, the Plan payments towards Beneficial's "unsecured" claim**. (Tran. p.4, lines 9-13).

Despite the Plan's provisions, the Debtor's payments, and Beneficial's understanding of the Plan and acceptance of Plan payments, the Bankruptcy Court found that "… the Plan was confusing …, not clear enough to have satisfied the notice requirement of due process."  (J. Hillman Memo. p.10)[14] The Bankruptcy Court's *sua sponte* constitutional conclusion was clear error.

> **A.  Where Beneficial's Claim is "Provided For" by a Confirmed Plan, and Beneficial Receives Adequate Notice of its Treatment, *Res Judicata* Acts to Extinguish Any Interest Not Preserved by the Plan**

In order to effectuate the "fresh start" doctrine at the heart of the Bankruptcy Code, its provisions provide powerful protection for debtors whose plans are confirmed:

> (a)  The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

> (b)  Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

> (c)  Except, as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

---

[14] Although the Bankruptcy judge stated that Beneficial claimed a lack of "due process notice", that, too, is simply wrong. (J.Hillman Memo. p. 9-10) No "due process notice" argument was ever made by Beneficial; the Bankruptcy Judge's conclusion here was wholly, *sua sponte*, without the benefit of argument from either party.  And Beneficial's **entire argument** below was that, despite the Plan's provisions, Beneficial's acceptance of Plan payments, and no Proof of Claim, Beneficial's secured lien passed through the bankruptcy unaffected by the Plan. (Post-Confirm. ¶¶ 17,20,28)

11 U.S.C.A. §1327; <u>See</u>, <u>In re Walker</u>, 128 B.R. 465, 467 (Bankr.D.Idaho 1991) *quoting* 5

LAWRENCE P. KING ET AL., COLLIER ON BANKRUPTCY ¶ 1327.01[1] (15th ed.1990)

> [t]he purpose of § 1327(a) is the same as the purpose served by the general doctrine of res judicata. There must be finality to a confirmation order so that all parties may rely upon it without concern that actions which they may thereafter take could be upset because of a later change or revocation of the order....<u>Id.</u>

<u>In re Pardee,</u> 218 B.R. 916, 923 (9th Cir. BAP 1998) (the concept of the preclusive effect of final

orders is a basic principle of American jurisprudence); <u>Stoll v. Gottlieb</u>, 305 U.S. 165, 59 S.Ct.

134, 83 L.Ed. 104 (1938).

Thus, Debtor's Plan of Bankruptcy, confirmed by an Order of the bankruptcy court, is:

> A final order, with *res judicata* effect, and is
> imbued with the strong policy favoring finality.

<u>Fili v. Factors Funding Co.</u> (<u>In re Fili</u>), 257 B.R. 370, 373 (1st Cir. B.A.P., 2001) citing, *inter*

*alia*, <u>Barbosa v. Soloman</u>, 235 F.3d 31, 41 (1st Cir. 2000) (code provisions "... do afford

significant finality to confirmed plans."); <u>See also</u>, <u>In re Carvalho</u>, 335 F.3d 45, 49 (1st Cir. 2003)

("confirmation of a Chapter 13 plan customarily is res judicata – as to all issues that were or

could have been decided during the confirmation process.").[15] And we now know that Beneficial

filed a proof of claim: thus "participating" in the bankruptcy proceeding. (Secured poc)

Consequently, in this jurisdiction, and in most others, the confirmation of a Chapter 13 plan

which treated a creditor's claim as unsecured conclusively precluded the creditor from asserting

that its interest is secured: at least where the plan specifically treats the claim, and the creditor,

despite notice, neither objects to, nor appeals, the order of plan confirmation.  <u>Fili</u>, <u>supra</u>; <u>See</u>

---

[15]  <u>See also</u>, <u>In re Welch</u>, 1998 WL 773999 *2 (6th Cir., 1998, unpublished) ("[p]reclusion under § 1327 is somewhat harsher than common law preclusion, however.")

also, In re Penrod, 50 F3d 459, 462 (7th Cir. 1995), addressing a plan under Chapter 12, where,

Chief Judge Posner concluded:

> The questions we must decide: is whether
> preexisting liens survive a reorganization ….We
> have concluded that the default rule for secured
> creditors who file claims for which provision is
> made in the plan of reorganization **is extinction** and
> is found in the Code itself. Id. at 462.

Accord, In re Andersen, 179 F.3d 1253 (10th Cir. 1999); In re Pardee, 218 B.R. 916, 925 (9th Cir.

BAP 1998) (plan provision that is contrary to the Code or is otherwise illegal may not be

challenged postconfirmation for the first time, as it is not unlawful "for a creditor to stipulate or

consent to be treated in a manner not technically as stringent as required in the Code.") Id.; In re

Harvey, 213 F.3d 318, 322 (7th Cir. 2000) (unobjected to Chapter 13 Plan extinguished

Creditor's secured interest upon confirmation); In re BeMac, 83 F3d 1020 (8th Cir. 1996).[16]

In short, as Beneficial participated in the underlying bankruptcy action, unless its claim

was not provided for by the plan, or the notice of its treatment was constitutionally deficient,

Beneficial's security interest was extinguished, and the decision of the court below error.

> **B.    Where Beneficial Was Specifically Named, the Debt Described, and Plan
> Payments Made by the Debtor and Received by Beneficial, Beneficial's
> Claim was "Provided For by the Plan"**

---

[16]  Beneficial here has repeatedly cited Cen-Pen v. Hanson, 58 F.3d 89 (4th Cir., 1995), for its argument that the
confirmed plan can not effect the interests of a secured creditor. (Post-Confirm ¶¶17, 34) Disregarding Cen-Pen's
decided minority status for the moment, the Cen-Pen court repeatedly observed that Cen-Pen did not participate in
the bankruptcy, and "did not file a proof of claim", leaving it "free to ignore the bankruptcy proceeding and look
solely to the lien for satisfaction of the debt." Id. at 93-94. Here the Creditor **did file** a Proof of Claim; it was not
free to ignore the plan and its confirmation, and did "… so at its own risk". Fili, supra at 374. (Secured poc)

Disputes over whether a creditor's secured claim was "provided for by the plan" have proved the most fertile ground for contesting Plan treatment: in part, because courts' answers to this question cover a wide spectrum.[17]

On one end of the spectrum, Chief Judge Posner and his Seventh Circuit Court of Appeals hold that, where (as here) a secured creditor has filed a proof of claim, but the plan is silent as to payment of that claim, the plan must be held to "provide for" the secured claim by "extinction".  In re Penrod, supra; In re Harvey, supra.  That is, under Seventh Circuit doctrine, "… when the plan (or the order confirming it) does not mention the (secured) liens…, the default rule for secured creditors who file claims … is extinction …"  In re Penrod, 50 F.3d 459, 462.[18] As the Eighth Circuit holds, using a waiver analysis in similar circumstances:

> … the well known maxim of documentary interpretation '*expressio univus exclusio alterius*' … supports the conclusion that the (creditor waived their) conspicuously absent (claims).

In re Allen, 118 F.3d 1209,1294 (8th Cir.1997).

At the other end of the spectrum, the Ninth Circuit Court of Appeals has concluded:

> that the phrase 'provided' for in § 1328(a) simply requires that for a claim to become dischargeable the plan must 'make a provision for' it, i.e., deal with it or refer to it.[19]

---

[17]  As to this issue, and others raised here, the First Circuit Court of Appeals has not yet spoken: making these issues of first impression in this Court.

[18]  Here, the Debtor's Plan expressly identified the "SECURED CLAIMS" – three of them – and provided for their payment. (Plan, §**I. SECURED CLAIMS**).  Beneficial's claims were "conspicuously absent" from these provisions, making the maxim that 'including some excludes others' particularly appropriate.  However, the Debtor went on to expressly "provide for" Beneficial's claim as "unsecured" in § **IV.  UNSECURED CLAIMS** (bold in original) – adding significantly to the weight of the earlier exclusion. (Plan)

[19]  As Chief Judge Posner observed, the "extinction" rule is limited to circumstances where, as here, "… the holder of the (secured) lien participated in the reorganization" by filing a proof of claim. "If he did not, his lien would not be 'properly dealt with by the plan'…." In re Penrod, 50 F.3d 459,463.

Matter of Gregory, 705 F.2d 1118, 1122 (9th Cir. 1983). Between these poles, courts require that

the creditor "… at the very least, must be 'mentioned' by name or by category…" In re Burgess,

163 B.R. 726, 729 (Bkrtcy. M. D. Pa., 1993) or that the creditor must be specifically listed: either

in the plan or in the plan schedules. In re Harnish, 224 B.R. 91, 94 (Bkrtcy. N.D. Iowa, 1998).

Here, the plan "provided for" specifically identified secured creditors: "conspicuously"

excluding Beneficial from these provisions. Moreover, the plan identified Beneficial's claim as

"unsecured", and "provided for" payment of 13% of Beneficial's unsecured claim. (Plan) The

Debtor made, and Beneficial received, these "unsecured lien" payments. (Tran. p. 4 lines 9-13)

In these circumstances, courts across the spectrum hold that the Debtor's plan "provided for" and

"treated" Beneficial's claim.

The bankruptcy judge erred in concluding otherwise.

### C. <u>The Bankruptcy Judge Erred in *Sua Sponte* Concluding that the Plan's "Notice" to Beneficial was Constitutionally Defective.</u>

The final arrow in the quiver of the bankruptcy judge below was his constitutional due

process skewer: e.g., his *sua sponte* holding that "the Plan's express statement that the Debtor

would commence an adversary proceeding with respect to the disputed claim … was confusing

(and) not clear enough to have satisfied the notice requirement of due process." (J. Hillman

Memo. pp. 9-10). As to this conclusion, the court recognized that nothing in the predicted – and

now pending – adversary proceeding "notified" Beneficial that the to-be-filed adversary

proceeding would address the "unsecured" nature of Beneficial's lien – as opposed to the TILA,

Consumer Protection Act, RESPA and MCCCDA "damages" claims described in the plan:

> The plan states that the Debtor plans to file an
> adversary proceeding asserting various consumer

23

> protection claims with respect to the Beneficial
> debt, but it sets forth no information about the goals
> of that intended litigation … (recission of the
> mortgage, limitation of the debt, damages?)

(J. Hillman Memo. pp. 6, 10).

Despite the specific identification of the Beneficial claim as "unsecured", its payment as an unsecured claim under the plan, Beneficial's acknowledgment of the plan provisions and acceptance of the plan payments, and the court's express recognition of the predicted adversary proceeding was not "tied to" the plan's treatment of the Beneficial claim as "unsecured", the bankruptcy judge concluded that the plan notice was constitutionally infirm.

No case so holds, and no precedent so suggests.

That is, the scope of constitutional due process "notice" requirement, applicable to bankruptcy proceedings, is well-defined:

> Due process requires notice reasonably calculated,
> under all the circumstances, to apprise interested
> parties of the pendency of the (claim) and afford
> them an opportunity to present their objections.

In re Barton Industries, 104 F.3d 1241,1245 (10th Cir. 1997), *quoting* Mullane v. Central Hanover Bank & Trust, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950); Accord, In re Penrod, 50 F.3d 459, 464 (7th Cir. 1995) (no due process issue from extinguishment of secured interest by plan provision, where creditor had notice, opportunity for appeal).  The notice which is required is, however, not "perfect" notice – but rather "inquiry" notice; that is, a creditor who has received notice of a bankruptcy proceeding, and of a plan proposing payments to creditors:

> … is under constructive or inquiry notice that its claim may be affected, and it
> ignores the proceedings to which the notice refers at its peril.  Whatever is notice
> enough to excite attention and put the party on his guard and call for inquiry is
> notice sufficient of every thing to which such inquiry may have led.

Matter of Gregory, 705 F.2d 1118,1123 (9th Cir.1983).

In assessing such notice – especially where (as here) the creditor has submitted its lien to the process by filing a proof of claim – the plan is not invalidated simply because its provisions maybe "… somewhat confusing".  Harmon v. United States, 101 F.3d 574, 584 (8th Cir.,1996). Nor may a creditor prevail on a challenge to "adequate notice" by the plan on the grounds that the terms of the plan are somewhat "…vague or ambiguous". In re Harvey, 213 F3d 318, 322 (7th Cir., 2000):

> A creditor is not entitled to stick his head in the sand and pretend it would not lose any rights by not participating in these proceedings. Id.

 Accord, In re Spartan Mills, 112 F.3d 1251,1256-7 (4th Cir.1997) (creditor with notice of plan's adverse treatment of its security interest "… cannot allow a final (plan confirmation) order that deprives it of a lien position to stand and then hope to attack it collaterally at another time", unless they "… object and appeal (the order) as required."); See also, In re Andersen, 179 F.3d 1253, 1257 (10th Cir.1999) ("[a] creditor cannot simply sit on its rights and expect that the bankruptcy court or trustee will assume the duty of protecting its interests."); In re Szostek, 886 F.2d 1405, 1414 (3rd Cir. 1989) (stating … that creditors must take an active role in protecting their rights); In re Gregory, 705 F.2d 1118,1123 ("although notice received by (Creditor) was not unambiguous, **it was not constitutionally inadequate**.")[20]

---

[20] Indeed, even where the plan and disclosure statement sent to the creditor did not "refer to the (security interest of the Creditor's interest therein), **or the plan's effect on them**", the Tenth Circuit held it was a "close case" whether the creditors "receive(d) sufficient notice".  In re Barton, 104 F.3d 1241,1246. Given that standard, the Debtor's plan here more than met the constitutional minimum.

25

Finally, and especially noteworthy here, courts addressing "inadequate notice" claims recognize that the "reasonable notice" standard requires that the notice be evaluated in light of the creditor's sophistication and experience in the bankruptcy process". In re Harnish, 224 B.R. 91, 93 (Bkrtcy. N.D. Iowa; 1958); In re Basham, 167 B.R. 903, 908 (Bkrtcy. W.D. Mo, 1994). As to the standard, in language literally describing Beneficial's conduct below, the Basham court reasoned:

> (The creditor) had sufficient notice of the plan's treatment to be bound to the plan's terms. (It) is a sophisticated lender that was aware that its rights could be modified in a Chapter 13 proceeding.(It) had notice of the filing of the petition. (It) did not file its claim until after the plan was confirmed ….This creditor had adequate opportunity to challenge the proposed plan prior to its confirmation, and it is disingenuous for (it) to now challenge that plan. (It) cannot be an ostrich. By failing to object to plan confirmation, (it) lost its right to contest the plan.

Id. And so it is here.

The bankruptcy judge's contrary holding was error.


II.     **THE BANKRUPTCY COURT ERRED IN GRANTING BENEFICIAL RELIEF FROM THE AUTOMATIC STAY AS BENEFICIAL FAILED TO MEET ITS BURDEN TO PROVE THE VALIDITY OF ITS SECURITY INTEREST AND IN LIGHT OF THE ADEQUATE EQUITY CUSHION**

The Bankruptcy Court clearly erred in granting relief from the automatic stay where the Beneficial both failed to meet its burden of demonstrating a valid security interest in the property, and failed in **any way** to respond to Debtor's substantiated claim that the underlying lien was rescinded. (Post Confirm; MRFS) Irrespective of Debtor's treatment of Beneficial in its Plan, or of the Bankruptcy Court's findings with respect to the *res judicata* effect of plan confirmation, once Debtor raised claims and provided evidence suggesting that the Beneficial's

26

security interest was invalidated and Beneficial utterly failed to meet its burden or even respond

to these claims, the Bankruptcy Court was obliged to undertake an analysis of these claims. The

Bankruptcy Court, in fact, failed to engage in any analysis of these claims, limiting its holding to

a single paragraph in its Order and Decision, stating:

> Where the Debtor has failed to bring her promised adversary proceeding in the
> Bankruptcy Court to resolve her dispute with Beneficial and has failed to make
> postpetition payments, I do not view the alleged rescission as cause to deny relief
> from stay. She has simply failed to avail herself of the opportunity she has to use
> this court and the bankruptcy process as the forum and context in which to resolve
> her issues with Beneficial. It is only appropriate now to permit Beneficial to have
> recourse to its rights under state law, whatever they may be. The Debtor may yet
> bring a proceeding against Beneficial in state court, in opposition to Beneficial's
> complaint for foreclosure. I make no ruling as to the merits of such an action, or
> as to whether and on what terms she is entitled to an injunction against
> foreclosure during the pendency of such an action, or as to whether and on what
> terms she is entitled to an injunction against foreclosure during the pendency of
> such an action. Those are issues for the state court to decide. (J. Hillman Memo.
> p.12)

The Bankruptcy Court failed in its obligation to require that the Creditor show a

"reasonable likelihood" that it held a valid security interest in the Debtor's home. Grella v.

Salem Five Cent Sav. Bank, 42 F.3d 26, 33 (1st Cir. 1994):

> Certainly, a court may take into account any matter that bears
> directly on the debtor's equity, or that clearly refutes a creditor's
> claim to the property.  For example, if a [Debtor] raises a defense
> to a creditor's claim at the relief from stay hearing, the court…
> may consider it when deciding whether to lift the stay. Id. at 34.

Indeed, where, as here, the Debtor challenges the "colorability" of the creditor's security interest,

files affidavit and documentary evidence in support of its challenge (Not. Rescission; A. Opp.

MRFS, Ex. A,B; Unsecured poc; Plan), the creditor's own lien documents evidence the facial

invalidity of the lien (MRFS Ex. A, B; Post-Confirm Ex. A, B; Secured poc), and the creditor

27

never files a single factual explanation or a single legal argument to demonstrate the "reasonable

likelihood" that its secured claim is "colorable":

> A claim that has clearly been (rescinded or) waived is no longer
> colorable…. ('The court may consider any defenses or
> counterclaims that bear on whether [a colorable claim] exists.')
> Further, in some cases the question of [validity] will be clear from
> the record as a matter of law or from undisputed facts…. [If] the
> [creditor] has clearly, on the record or on undisputed facts…
> [without] rights as a matter of law so as to deprive it of even a
> colorable claim…, then the bankruptcy was correct to conclude
> that those rights no longer entitled the [creditor] to move for a lift
> of the stay.

In re Calore Express, 288 F.3d 22, 35 (1st Cir., 2002). Given the undisputed factual record

established by the Debtor, and wholly unrebutted by Beneficial, the Bankruptcy Court's absolute

refusal to even consider whether Beneficial had shown a "reasonable likelihood" that its asserted

"secured" claim was valid alone justifies the reversal of the underlying Order and Decision under

Grella, and other courts applying the standard for lifting a stay:

> If, by reason of an alleged violation of the statute of frauds, usury, unconscionability, lack
> of consideration, or other similar circumstance, the debt is unenforceable against the
> debtor, either in whole or in part, then, to such extent, the claim is not allowable under
> [11 U.S.C.] § 502 (b)(1). To the extent it is not allowable, it will not be a secured claim as
> determined under [11 U.S.C.] § 506 and thus will not require adequate protection for the
> value thereof under 362.
>
> United Cos. Fin. Corp. v. Brantley, 6 B.R. 178, 184 (Bkrtcy. N.D.Fla.1980).[21]

Numerous other courts concur that the existence of defenses to a creditor's claim is

relevant to a determination of that creditor's motion for relief. Grella, 42 F.3d 26, 33 [22] ; In re

---

[21] As the United Companies court observed:
> [W]hen affirmative defenses or counterclaims are asserted and raised which strike at the heart of the
> amount of the creditor's claim or the validity of his lien, such defenses or counterclaims directly affect the
> issue of equity and thus the issues of harm and adequate protection, as well as the reasonable probability of
> any plan of reorganization. When such are asserted or raised, the court should give consideration to them in
> determining whether or not the stay should remain in effect.

United Cos. at 188.

Tally Well Service, Inc., 45 B.R. 149, 151 (Bkrtcy. E.D.Mich.1984) (holding that nothing in the Congressional history indicates that a bankruptcy judge should ignore facts which would bear upon the ultimate resolution of the dispute, and thus it is perfectly appropriate to acknowledge the presence of affirmative claims in determining a creditor's equitable right to relief); In re Gellert, 55 B.R. 970, 975-76 (Bkrtcy. D.N.H. 1985) (acknowledging bankruptcy court's discretion to consider defenses in exercising its equitable discretion).

It is clear that objections as to the validity of Benficial's claim ultimately had a direct and substantial bearing on the enforceability of the debt as a secured claim and thus the entitlement of Beneficial to relief from the stay. Unless the Creditor established that it held a secured interest in the property, questions as to sufficient equity in the property and the adequacy of protection for Beneficial were irrelevant. Here, Beneficial's security interest was treated as unsecured, and Debtor filed the underlying Bankruptcy Petition scheduling the security interest as rescinded, based principally upon violations of the Truth-in-Lending Act ("TILA"),15 U.S.C. §1601 et.seq., 12 C.F.R. 226) and the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"), M.G.L.c.140D and 209 C.M.R. 32 as set forth in the rescission notice sent November 17, 2003 and made part of the record below. (A. Opp. MRFS Ex. A; Not. Rescission)

It is well settled that creditors must strictly comply with the disclosure requirements of TILA and MCCCDA, or the loan transactions are subject to rescission. Begala v. PNC Bank, 163 F.3d 948, 950 (6th Cir. 1998); Mayo v. Key Fin. Servs., 424 Mass. 862, 864-65; 678 N.E.2d 1311, 1313 (1997); In re Rodrigues, 278 B.R. 683, 687 (Bkrtcy D.R.I. 2002). Under TILA,

---

[22] Grella limited issues in stay proceedings to claims that directly refute the creditor's claim to the property, reasoning that state courts, rather than the bankruptcy court, provided the better forum for other, "non-core" claims. Grella at 34.  Of course, in a non-judicial foreclosure jurisdiction such a Massachusetts, no other state court process is required: making this court an even more appropriate forum for this issue. Id.

lenders are strictly liable for violations regardless of whether the consumer was misled, suffered damages or did not rely on the disclosure. Purtle v. Eldridge Auto Sales, Inc., 91 F.3d 797, 800-02 (6th Cir. 1996); Zamarippa v. Cy's Car Sales, 674 F.2d 877, 879 (11th Cir. 1982).

      Rescission voids the security interest in the property, Reg. Z, 12 C.F.R. §226.23(d)(1-4), and defeats Creditor's allegations that it has a colorable claim to the property of the estate. The statutory commands, and the courts' consequent stringent construction of the TILA and the MCCCDA to effectuate their remedial purposes makes lenders strictly liable in the event that they violate these acts: an appropriate result, given lenders' overwhelming "bargaining" power and sophistication as compared to most home buyers. Dwyer v. Barco Auto Leasing Corp., 903 F. Supp. 205, 210 (D. Mass. 1995) (prohibiting defendants from frustrating the broad remedial purposes of TILA, as "[C]ongress vested considerable power in consumers, creating an army of private attorneys general to enforce its provisions, which were designed to 'balance scales thought to be weighed in favor of lenders and [are] thus to be liberally construed in favor of borrowers"), *quoting* Bizier v. Globe Fin. Servs., Inc., 654 F.2d 1, 2-3 (1st Cir. 1981); Smith v. Fid. Cons. Disc. Co., 898 F.2d 896, 898 (3d Cir. 1988) ("[a] creditor who fails to comply with TILA in any respect is liable to the consumer under the statute regardless of the nature of the violation or the creditor's intent."); Grant v. Imperial Motors, 539 F.2d 506, 510 (5th Cir. 1976) ("[o]nce the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability"); Shepard v. Fin. Assocs., 316 N.E.2d 597, 603 (Mass. 1974) (finding that MCCCDA and TILA are to be liberally construed); Purtle v. Eldridge Auto Sales, Inc., 91 F.3d 797, 801 (6th Cir. 1996) (under TILA, lenders are strictly liable for violations even if the consumer was not misled, suffered no damages, and did not even rely on the faulty disclosure*);

Rodrigues v. U.S. Bank, 278 B.R. 683, 687 (Bkrtcy. D.R.I. 2002) (finding TILA upholds standard of strict liability for a violation of any provisions).

The Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA") was likewise enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."[23]; Fidler v. Central Coop. Bank, 226 B.R. 734, 736 (Bankr. D. Mass. 1998). To accomplish its purpose, the MCCCDA and the regulations promulgated by the Massachusetts Division of Banks and Loan Agencies, 209 C.M.R. § 32.01, et seq., require lenders to make disclosures of certain material terms clearly and conspicuously in writing, in a form that the consumer may retain for reference. M.G.L. 140D, § 8; 209 C.M.R. § 32.17(1)(a). Terms that are considered material include, but are not limited to, the finance charge, the annual percentage rate, the amount financed, and the number and amount of payments. M.G.L. 140D, §§ 4, 5, 12; 209 C.M.R. § 32.18. Likewise, in a credit transaction in which a security interest will be retained on the principal dwelling of the consumer, the consumer has the right, and the creditor has the obligation to notify him or her of the right, to rescind the transaction within three business days. M.G.L. 140D, § 10; 209 C.M.R.§ 32.23(1)(c). The failure by the creditor to comply with the material disclosure requirements has the effect of extending the consumer's right to rescind the transaction for four years. M.G.L. 140D, § 10(i)(3); 209 C.M.R. § 32.23(1)(c).

In a bankruptcy proceeding, rescission voids the creditor's security interest, without

---

[23] The Massachusets CCCDA was directly modeled after the Truth in Lending Act. Mayo v. Key Fin. Servs., 424 Mass. 862, 678 N.E.2d 1311, 1313 (Mass. 1997). Accordingly, courts will rely on TILA, and its federal caselaw, to interpret the Massachusetts statute. Fluehmann v. Assocs. Fin. Servs., 2002 WL 500564, at *3 n.2 (D. Mass. 2002); In re Botelho, 195 B.R. 558, 565 (Bankr. D. Mass. 1996).

tender of repayment, and allows the debtor to treat the amount due as unsecured debt.  In re Myers, 175 B.R. 122, 128 (D. Mass 1994) ("'[b]ankruptcy, however, relieves the debtor from his obligation to pay the creditor upon rescission….It would be palpably unfair to deny the relief to which a consumer is entitled under TIL because that consumer has also availed himself of bankruptcy relief. To do so would require that the consumer choose between bankruptcy and TIL, something neither form of statutory relief contemplates.'"); In re Whitley, 177 B.R. 142, 153 (Bankr. D. Mass. 1995) (holding that "upon receipt of the notice [of rescission], the mortgage was void, and [mortgagee's] claim became an unsecured claim"); In re Rodrigues, 278 B.R. 683, 689 (D.R.I. 2002); Williams v. Gelt Fin. Corp., 237 B.R. 590, 598-99 (D. Pa. 1999).

For the reasons set forth below, which were entirely before the Bankruptcy Court, Beneficial's loan was validly rescinded and treated as unsecured under the plan. (A.Opp. MRFS Ex. A; Not. Rescission; Plan) The Court's failure to require Beneficial to prove the validity of its lien in the face of this valid rescission was clearly erroneous.

A.     **Beneficial's failure to provide mandatory disclosures violated TILA and MCCCDA and Debtor's proper rescission of the loan transaction rendered the existing security interest void.**

As set forth below, Beneficial failed to accurately disclose the true cost of credit for this transaction. The HUD-1 Settlement Statement tendered to the Debtor at closing failed to include an accurate statement of costs incurred at the closing. (AP ¶32; AP Ex. A) The failure of Beneficial to include fees in the finance charge resulted in incorrect and misleading disclosures of the true cost of this credit, and subjected this loan to rescission.

32

Moreover, the total points and fees exceeded 5% of the total loan amount, making this a high cost loan transaction. (AP ¶¶ 42-44; AP Ex. A)  It is undisputed that Beneficial failed to provide Debtor with any of the additional disclosures required pursuant to the Massachusetts regulations governing high costs loans in violation of 209 C.M.R. §32.32.

As the true cost of the credit was under-disclosed in excess of the permitted tolerance levels, and as the Debtor properly rescinded the loan transaction, the mortgage securing the loan was automatically voided. 15 U.S.C. §1635 (b); Reg. Z, 12 C.F.R. §226.23(d)(1); Porter v. Porter, 961 F.2d 1066, 1077 (3rd Cir. 1992); In Re Botelho, 195 B.R. 558 , 568 (Bankr. D. Mass. 1996), *abrogated on other grounds* Beach v. Ocwen Federal Bank 523 U.S. 410, 118 S.Ct. 1408 (1998) (further finding that because the provisions of MCCCDA parallel those of TILA, it is construed in accordance with federal law).

> **B.   Beneficial's failure to provide Debtor with a Notice of Right to Cancel at least three days prior to the date of the loan transaction violated TILA and MCCCDA and Debtor's proper rescission of the loan transaction rendered the existing security interest void.**

Consumers refinancing a loan have a right to rescind that loan transaction and must receive proper disclosure of that right. 15 U.S.C. §1635(a); Reg. Z §§226.15(a)(1)(i), 226.15(b), 226.23(a)(1); 209 C.M.R. §32.23(1). That disclosure must be given in a form the consumer may keep. Reg. Z §§226.17(a), 226.23(b)(1); 209 C.M.R. §32.23(2)(a). The notice must provide the consumer with the date the rescission period expires, which must be at least three business days following consummation of the loan. Reg. Z §§226.23(a)(3); 226.23(b)(1)(v); 209 C.M.R. §§32.23(1)(c), 32.23(2)(a)(5). While, a rescission notice may be given after consummation of the

33

loan, (See Official Staff Commentary §226.23 (b)(4)), it is plainly obvious that a lender may not provide a consumer with a notice of right to cancel which expires **prior** to the actual consummation of the loan.

Beneficial annexed a copy of its Loan Agreement as Exhibit "A" to it's underlying Motion for Relief from the Automatic Stay and its Motion for Post-Confirmation Relief, with a loan date of **July 13, 2001**. (MRFS, Ex. A, B; Post-Confirm Ex. A, B) Debtor received a Notice of Right to Cancel, dated **July 9, 2001**, which sets the expiration of her three-day right to rescind at July 12, 2001: **the day before the actual consummation of the loan**. Beneficial's failure to tender to Debtor a proper Notice of Right to Cancel after consummation of the loan violated TILA and MCCCDA, and, as the Debtor properly rescinded the loan transaction, the mortgage securing the loan was voided. 15 U.S.C. §1635 (b); Reg. Z, 12 C.F.R. §226.23(d)(1); 209 C.M.R. §32.23(4).


C. **Beneficial's annexing of Debtor's loan note to its Motion for Relief from Stay and Motion for Post-Confirmation Relief purporting to be true copies of the loan note in question, but dated three days earlier and referencing a different loan number, also evidenced that Beneficial had no "reasonable likelihood" of proving it held a valid, secured interest in Debtor's home.**

As set forth above, Beneficial had twice annexed to motions filed in the Bankruptcy Proceeding a loan note and mortgage purporting to be true copies of those executed by Ms. Miles. (MRFS Ex. A, B; Post-Confirm Ex. A, B) The date of the loan documents, and the loan number, significantly differed from the documented loan to the Debtor, which was consummated on July 9, 2001: and Beneficial proffered no explanation whatsoever of the conflicting loan documents. And, the Bankruptcy Court not only failed to request an explanation, but it granted

34

Beneficial relief from the automatic stay without any showing that there was a reasonable explanation for the seemingly altered loan documents, and without any showing that there was a reasonable likelihood that a loan secured by falsified documents was legally enforceable. (J. Hillman Memo)

D. **The Bankruptcy Court erred in failing to require Beneficial to meet its burden and demonstrate a valid security interest**

Given the serious violations of TILA, MCCCDA, and the alleged fraud of Beneficial that was presented to the Court below, that Court erred in refusing to even consider the merits of these claims. By its refusal, the Court effectively sanctioned Beneficial's utter failure to meet its burden of production of evidence justifying relief from the stay: and it is the creditor, after all, however, who bears the burden of demonstrating that cause exists to lift the stay:

> The burden of proof on a motion to lift the automatic stay is a shifting one. The party seeking relief from the stay has the initial burden to show that cause exists to warrant relief. If the movant fails to make this initial showing, then the court should deny relief without requiring any showing from the debtor that continued protection is necessary. If, however, the moving party succeeds, then the burden of proof shifts to the debtor to show that the stay should remain in place.

In re Wang Laboratories, 1996 WL 87050 *5 (D. Mass, 1996); Accord, 11 U.S.C.A. §362(d)(1)(g); In re Busch, 294 B.R. 137, 141 (10th Cir. BAP 2003) (holding that the moving party bears the burden of showing "cause" exists to lift the stay); In Re Lee, 11 B.R. 84, 84 (Bkrtcy. E.D. Pa. 1981); In Re Trius Corp. 47 B.R. 3, 5 (Bkrtcy. D.S.C. 1984).

Beneficial made no showing. Even without any showing by the moving creditor, the Debtor presented substantial evidence that "the stay should remain in place." Despite this, the

court below vacated the stay. The Bankruptcy Court thus erred, as it refused to bind Beneficial to the scrutiny required under the law.

Moreover, under 11 U.S.C. §362(d), the statute indicates that a creditor's motion for relief from stay should also demonstrate cause for lifting the stay because the creditor lacks adequate security for the creditor's secured interest.

Beneficial has not shown sufficient cause to be granted relief from the automatic stay pursuant to either 11 U.S.C. §362(d)(1) or (d)(2). Debtor's equity in the property, even assuming Beneficial has a secured claim, provides Beneficial with adequate protection.[24]

Given that Beneficial is adequately protected, there was insufficient cause to grant relief from the automatic stay.  See In re Heath, 79 B.R. 616, 619 (Bankr. E.D. Pa. 1987) (denying motion to lift stay despite debtor's failure to make post-petition mortgage payments, a period of almost 2 years, where equity cushion of 39% adequately protects creditor); In re Vanasen, 81 B.R. 59 (Bankr. D. Or. 1987) (mortgagee denied relief from the stay even though the debtor failed to make post-confirmation mortgage payments where value of property exceeded amount due mortgagee by $20,000); Household Fin. Corp. v. Adams, 27 B.R. 582, 585 (D. Del. 1983) (denying motion to lift stay where creditor had adequate protection and despite debtor's failure to make any post-petition mortgage payments); In re Davis, 11 B.R. 680, 682 (Bankr. E.D. Pa. 1981) (denying motion to lift stay despite debtor's failure to pay mortgagee for period of eight months).

---

[24] The secured proof of claim asserted a balance due and owing of $256,720. The listed value of Debtor's real property on Schedule A was $300,000 in 2003, providing more than adequate security to Beneficial. (Secured poc; A. Reconn. P. 3-4 fn.5)

**III.    INSOFAR AS THE BANKRUPTCY COURT'S RULINGS RESTED ON ITS DISCRETION, THE COURT ABUSED ITS DISCRETION IN ITS SUMMARY DISMISSAL OF DEBTOR'S MOTION FOR RECONSIDERATION AND LEAVE TO OBJECT TO NEWLY DISCOVERED SECURED PROOF OF CLAIM**

Courts have inherent power to alter their own judgments, and should do so where newly discovered evidence would have altered the decision below: especially where the balancing of harms swings in favor of the moving party. Fed. R. Civ. P. 59(e); Boaz v. Mutual Life Ins. Co. of New York, 146 F.2d 321, 322 (8th Cir. 1944); 47 Am. Jur. 2d Judgments § 743.

Motions for Reconsideration under Rule 59 Fed. R. Civ. P., made applicable by Rule 9023 Fed. R. Bankr. P., require "newly discovered evidence or a manifest error of law or fact." In re Bank of New England Corp. 142 B.R. 584, 587 (D.Mass.1992); See also, In re Wedgestone Fin., 152 BR. 786, 788 (Bankr. D. Mass. l993). The First Circuit has held that "'newly discovered evidence' normally refers to 'evidence of facts in existence at the time of trial of which the aggrieved party was excusably ignorant.' " Rivera v. M/T Fossarina, 840 F.2d 152, 156 (1st Cir. 1988) *quoting* Brown v. Pennsylvania R.R. Co., 282 F.2d 522, 526-27 (3d Cir.1960)). See also, Alpern v. UtiliCorp United, Inc., 84 F.3d 1525, 1537 (8th Cir. 1996) (plaintiffs granted relief from judgment pursuant to newly discovered evidence, despite the fact that plaintiffs had evidence in their possession at the time of the judgment).

The seminal case on "excusable neglect" is Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), in which the Supreme Court addressed the burdens and standards a party must meet when seeking relief on the basis of "excusable neglect." Holding that a court should take into account "all the relevant circumstances surrounding the party's omission," the Court set forth some of the relevant considerations:

(1) The danger of prejudice to the debtor;

(2) The length of the delay and its potential impact on judicial proceedings;

(3) The reason for the delay, including whether it was within the reasonable control of the movant; and

(4) Whether the movant acted in good faith.

Id. at 395.

Finding "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." the Court vested judges with the responsibility of undertaking a thoughtful analysis of the facts specific to each case. Id. at 395.

The facts before the Bankruptcy Court directly and emphatically demonstrated that Ms. Miles was entitled to relief from the Court's underlying Orders in light of the newly discovered secured proof of claim. (A. Reconn.) First, the danger of prejudice to the Debtor could not be overstated. As was well known to the Bankruptcy Court, Ms. Miles faced the loss of her home, a severe and harsh result that could have been obviated my merely allowing the underlying case to be litigated on its merits. (A. Reconn. p.3) Second, less than ten days after the entry of Judge Hillman's Order, which was the first time Ms. Miles was afforded notice of the secured proof of claim filing, she filed the Motion for Reconsideration. (A. Reconn.) Moreover, Ms. Miles immediately initiated an adversary proceeding and annexed a copy of the filed complaint to that motion. (A. Reconn., Ex A) Third, Ms. Miles, the Chapter 13 Trustee, and even Beneficial's counsel, were wholly unaware that Beneficial had filed any proof of claim prior to the Court's Memorandum of Decision accompanying that Order. (J. Hillman Memo. p.3; Trustee Rpt.; Post-Confirm. ¶11; A. Reconn. Breger Aff. ¶13)

38

It has been held that a party is entitled to rely on the federal court's electronic filing system, PACER, in order to accurately verify the filings in a case. EnvisioNet Computer Servs., Inc. v. ECS Funding LLC, 288 B.R. 163, 167 (D. Me. 2002) (holding Appellees' response timely filed based on the deadline represented in the electronic docket as litigants "are certainly entitled to rely on the PACER system to accurately verify the filings in the case"); Hollins v. Dept. of Corr., 191 F.3d 1324, 1327-29 (11th Cir.1999) (finding the benefits of PACER only arise "if parties actually can *rely* on electronically available court information"). Id. at 1327; Lush v. Terri and Ruth F/V, 309 F. Supp. 2d 131, 133 (D. Me. 2004) (finding excusable neglect where attorney misread PACER entry given the "novelty" of electronic case filing).

In Hollins, the Court allowed an appeal to survive thirteen months after the deadline as a result of the failure of PACER to accurately reflect the date of entry of the underlying order. The Court explained that the appellant's reasonable reliance upon PACER constituted reliance as likened to specific assurances of a judicial offer, mandating the acceptance of the late filing. To note, the underlying case is not one in which a party relied upon PACER in disregard of local or federal rules. Accord, Osterneck v. Ernst & Whinney, 489 U.S. 169, 179 (1989); U.S. v. Heller, 957 F.2d 26, 30-32 (1st Cir. 1992) (finding the court should inquire into the reasonableness of a party's actions in totality when determining whether to apply equitable doctrine of unique circumstances justifying reliance on actions of court).

The holdings in these recent cases are aligned with the fundamental dichotomy that would arise between insisting on electronic filing while simultaneously penalizing litigants for their reliance upon such electronic dockets. To subject litigants to a draconian penalty for their reliance upon such electronic filings would greatly impact substantive legal rights. As of October

2003, the Bankruptcy Court had been encouraging Bankruptcy Court counsel to undertake filing and notice electronically, and in January 2005, electronic filing was mandated. If debtors risk the ultimate punishment when, as here, filings do not appear in the electronic case management system, due process rights are severely encroached upon.

PACER's inaccurate reflection of proofs of claim filings would be sufficient to warrant reconsideration of the lower Court's holding that Ms. Miles failed to treat Beneficial's interest and its denial of her request to file a late objection. However, Debtor's reasonable reliance upon PACER was only buttressed by representations made by Beneficial's own counsel that, in fact, Beneficial failed to file a proof of claim. (Post-Confirm. ¶11)

Counsel affirmatively stated in its filed motions that "Beneficial did not file a Proof of Claim in this Proceeding." (Post-Confirm. ¶11) Beneficial thereafter in oral argument failed in any way to controvert Debtor's allegation that Beneficial failed to file a secured proof of claim.

Beneficial's statements as to the absence of any proof of claim filed on its behalf are, in this Circuit, binding party admissions, upon which the Debtor was entitled to rely. Cerqueria v. Cerqueria, 828 F. 2d. 863, 865 (1st Cir. 1988), citing United States v. One Heckler-Koch Rifle, 629 F2d 1250, 1253 (7th Cir. 1980) (statement in brief may be treated as an "admission".); Verge v. U.S. Postal Serv., 965 F. Supp. 112, 119 (D. Mass. 1996) (''[a]dmission''... may encompass an admission made by counsel in a written brief'.); McKinley v. Afram Lines, 834 F. Supp. 510, 512-13 (D. Mass. 1993).

Fourth, there could be no argument that Ms. Miles acted in any way other than good faith and with due diligence. Through counsel, Ms. Miles regularly and consistently monitored

PACER and the Trustee's Claims Register to see whether any proof of claim was filed. (A. Reconn. Breger Aff. ¶¶ 8,9)

Given the undisputed lack of notice, the Bankruptcy Court's denial of leave to dispute the inaccurate and misfiled Beneficial proof of claim raises Ms. Miles' fundamental due process rights to notice and to be heard: and even final orders must yield where, as here, it is undisputed that the Debtor received neither notice nor hearing opportunity. In re Barton Industries, 104 F.3d 1241, 1245 (10th Cir. 1997) *quoting* Mullane v. Central Hanover Bank & Trust, 339 U.S. 306, 314, 94 L. Ed. 865, 70 S Ct. 652 (1950) ("[d]ue process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the (claim) and afford them the opportunity to present their objections…. [D]eprivation of... property by adjudication (must) be preceded by notice and opportunity for hearing.") Id. at 313; In re DiNova, 212 B.R. 437, 442-5 (B.A.P. 2 Cir. l997) (due Process rights of debtor violated by Bankruptcy court dismissal of action upon motion of which debtor received neither notice nor opportunity to be heard).

Here, the Bankruptcy Court erred in refusing to consider the import of Debtor's reasonable reliance upon the apparent failure of Beneficial to file a secured proof of claim in this case, and in failing to allow Debtor to file a late objection to this clam. Debtor's reasonable reliance upon Beneficial's lack of filing was wholly determinative in this case.

The Bankruptcy Court's response to Ms. Miles' Motion for Reconsideration: a summary rejection of the motion with no opposition, and no hearing. (J. Hillman's Denial) Instead, the Court reaffirmed Beneficial's green light to foreclose on Ms. Miles' home without any adjudication as to the validity of its lien. This abuse of discretion was draconian, especially in

light of the balancing of harms. Beneficial would not have been harmed by the court requiring it

to defend its security interest; in fact, the court disregarded the burden Beneficial was under to

do just that. But the harm to Ms. Miles was far greater, and given the serious violations of federal

and state laws governing mortgage lending, the egregious terms of the loan, and the deceptive

practices evident on the face of the documents Beneficial filed in the Court below, the denial of

the Motion for Reconsideration was an abuse of the court's discretion.


## <u>CONCLUSION</u>

Debtor respectfully requests that this Honorable Court vacate both orders of the

Bankruptcy Court, determine that the confirmed plan did affect the validity of Beneficial's lien,

determine that Beneficial is an unsecured Creditor, find Beneficial is restricted to the 13%

dividend afforded to it as an unsecured creditor pursuant to the Plan, and reinstate the automatic

stay. In the alternative, Debtor respectfully requests that this Honorable Court vacate both orders

of the Bankruptcy Court, reinstate the automatic stay, and remand the case to Bankruptcy Court

with instructions to stay any decision as to the secured or unsecured status of its lien and any

dividend paid thereto pending resolution of the filed adversary complaint and adjudication of

claims that the loan was lawfully rescinded.

42

Respectfully Submitted,
JEAN MILES
By her attorneys,

/s/ Kimberly Breger
Kimberly Breger, Esq.
BB0# 600925
Legal Services Center of
Harvard Law School
122 Boylston Street
Jamaica Plain, MA  02130


/s/ Paul Collier (with permission)
Paul Collier, Esq.
Law Offices of Paul Collier
BBO# 092040
675 Massachusetts Ave.
Cambridge, MA 02139


Dated: March 2, 2005

43

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS (Boston)

| | |
|---|---|
| **Jean Miles,**<br>　　　　**Appellant**<br>**v.**<br><br>**Beneficial Massachusetts,**<br>　　　　**Appellee** | **Case No. 1:05-cv-10226-WGY** |

## CERTIFICATE OF SERVICE

　　　I hereby certify that on March 2, 2005, I electronically served the Brief of the Appellant. The following participants have received notice electronically:


Patricia Davis, Esq.
Thomas Carlotto, Esq.
Schechtman Halperin and Savage
86 Weybosset Street
Providence, RI 02903
(401) 272-1403

　　　　　　　　　　　　　　　Jean Miles
　　　　　　　　　　　　　　　　　By her attorney,


　　　　　　　　　　　　　　　/s/ Kimberly Breger
　　　　　　　　　　　　　　　Kimberly Breger, Esq.
　　　　　　　　　　　　　　　BBO# 600925
　　　　　　　　　　　　　　　Legal Services Center
　　　　　　　　　　　　　　　of Harvard Law School
　　　　　　　　　　　　　　　122 Boylston Street
　　　　　　　　　　　　　　　Jamaica Plain, MA   02130
　　　　　　　　　　　　　　　(617) 390-2694

44

Westlaw.

FOR EDUCATIONAL USE ONLY

Page 1

Slip Copy
1998 WL 773999 (6th Cir.(Tenn.))
**Unpublished Disposition**
**(Cite as: 1998 WL 773999 (6th Cir.(Tenn.)))**

▷

**Briefs and Other Related Documents**

Only the Westlaw citation is currently available.

NOTICE: THIS IS AN UNPUBLISHED OPINION. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.

NOTE: THIS OPINION WILL NOT BE PUBLISHED IN A PRINTED VOLUME. THE DISPOSITION WILL APPEAR IN A REPORTER TABLE.

United States Court of Appeals, Sixth Circuit.
In **re**: Hayden R. **WELCH**; Diana R. Welch,
Debtors.
Jo Ann CLINE, Appellant,
v.
Hayden R. WELCH; Diana R. Welch, Appellees.
No. 97-5080.

Oct. 11, 1998.

On Appeal from the United States District Court for the Eastern District of Tennessee.

Before WELLFORD, MOORE, and CLAY, Circuit Judges.

OPINION

MOORE, Circuit Judge.

*1 After modifying their Chapter 13 bankruptcy plan to provide for the payment of 27% of allowed unsecured claims, the debtors, Hayden R. Welch and Diana R. Welch, tendered a lump-sum payment to the trustee sufficient to satisfy the plan obligation, and the Welches received a discharge. Jo Ann Cline, an unsecured creditor, appealed the discharge, arguing that prepayment was impermissible. We conclude, however, that the issues raised on appeal by Cline are precluded by 11 U.S.C. § 1327(a), which binds the debtor and creditors to the "provisions of a confirmed plan." Thus, we AFFIRM the district court's denial of Cline's appeal.

I. FACTS AND PROCEDURAL HISTORY

Jo Ann Cline was an unsecured creditor of Hayden and Diana Welch. The Welches filed a petition under 11 U.S.C. Chapter 13, and eventually a plan of reorganization, with modifications, was confirmed by order of the bankruptcy court. This plan obligated the debtors to make biweekly payments of $161.54 to the bankruptcy trustee for the benefit of the unsecured creditors for sixty months or until the unsecured claims were paid in full, whichever occurred first. J.A. at 105. The unsecured claims of Cline and Mr. Welch's father were thereafter allowed by the court. Subsequently, the Welches tendered a lump-sum payment to the trustee which they calculated to be the balance of the periodic payments remaining due under the plan. J.A. at 109. Relatives of the debtors provided the funds for this tender. At a hearing initiated by the trustee, however, the bankruptcy court refused to permit the lump-sum payment. Although equal to the sum of the outstanding periodic payment obligations, the sum tendered was significantly less than the total amount of the allowed claims of the unsecured creditors. Thus, the bankruptcy court held that such a prepayment violated the plan requirement of payments for sixty months or until unsecured claims were paid in full. J.A. at 112, 144.

On December 28, 1994, the debtors filed a modified Chapter 13 plan (the "Modified Plan") that included a supplement providing that the debtors would pay $21,000 to the trustee for the benefit of the unsecured creditors in biweekly installments of $161.54 for 60 months or sooner, at the debtors' option. J.A. at 114-15. At a hearing the bankruptcy court determined that it could not approve a plan providing a lump-sum repayment option under the disposable income requirement of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 U.S.C. § 1325(b), but that it could approve a plan that "simply called for a certain percentage pay-out to [unsecured] creditors." J.A. at 180. During the hearing, the debtors moved to amend the Modified Plan to strike the supplement, to provide for biweekly payments of $161.54 "until completion of plan," and to provide for the payment of 27% of allowed unsecured claims. J.A. at 117. The bankruptcy court entered an order confirming the amended Modified Plan on February 13, 1995. J.A. at 116-17. Cline did not appeal from the confirmation of the Modified Plan.

**\*2** On March 9, 1995, the debtors moved for permission to complete the Modified Plan by making a lump-sum payment equal to the outstanding portion of 27% of allowed unsecured claims. J.A. at 118. The bankruptcy court held that such an application for permission was unnecessary because the plan would be completed automatically by payment of the outstanding balance. J.A. at 298. The court therefore struck the debtor's application. J.A. at 123. The debtors then submitted the outstanding balance to the trustee, and the bankruptcy court entered an order discharging the debtors based on the completion of the Modified Plan pursuant to 11 U.S.C. § 1328. J.A. at 124.

Cline appealed the discharge order to the district court. The district court properly exercised jurisdiction pursuant to 28 U.S.C. § 158(a) and dismissed the appeal, concluding that res judicata precluded Cline from arguing that the Modified Plan failed the good-faith or disposable income tests and holding that the plan as modified permitted prepayment. J.A. at 316-17. Cline now appeals that decision. We have jurisdiction pursuant to 28 U.S.C. § 158(d).

## II. ANALYSIS
### A. Standard of Review
"In a bankruptcy proceeding, the district court reviews the bankruptcy court's conclusions of law de novo and upholds its findings of fact unless they are clearly erroneous. This court, in turn, considers directly the judgment of the bankruptcy court, 'using the same standards of review as the district court." ' *255 Park Plaza Assocs. Ltd. Partnership v. Connecticut Gen. Life Ins. Co. (In re 255 Park Plaza Assocs. Ltd. Partnership)*, 100 F.3d 1214,

1216 (6th Cir.1996) (citations omitted) (quoting *Nicholson v. Isaacman (In re Isaacman)*, 26 F.3d 629, 631 (6th Cir.1994)). We review de novo the independent legal conclusions of the district court, such as the application of preclusion principles to a bankruptcy appeal. *See Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir.1992), *cert. denied*, 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993).

### B. The Preclusive Effect of 11 U.S.C. § 1327
11 U.S.C. § 1327 sets forth the effects of a confirmed Chapter 13 plan. Section 1327(a) provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Section 1327(a) has been consistently interpreted as barring the relitigation of any issue which was decided or which *could have been decided* at confirmation. *See Multnomah County v. Ivory (In re Ivory)*, 70 F.3d 73, 75 (9th Cir.1995); *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir.1989); *Young v. IRS (In re Young)*, 132 B.R. 395, 396 (S.D.Ind.1990); *Lester Mobile Home Sales, Inc. v. Woods (In re Woods)*, 130 B.R. 204, 205 (W.D.Va.1990). A leading bankruptcy authority has said that "the order confirming a chapter 13 plan represents a binding determination of the rights and liabilities of the parties as ordained by the plan," 8 COLLIER ON BANKRUPTCY ¶ 1327.02, at 1327-3 (15th ed.1998), that it is "quite clear that the binding effect ... extends to any issue actually litigated by the parties and any issue necessarily determined by the confirmation order," *id.* at 1327-5, and that the "binding effect of the plan also bars creditors from raising, at the time of a motion for modification of the plan, issues that could have been raised at the time the plan was originally confirmed ." *Id.* at 1327-6. [FN1]

> FN1. Although the courts often invoke the term "res judicata" in describing the § 1327(a) bar to relitigation, it should be recognized that this statutorily derived bar equates to neither traditional claim preclusion nor traditional issue preclusion. "[C]laim preclusion ... is the doctrine ... by which a final judgment on the merits in an action precludes a party from bringing a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FOR EDUCATIONAL USE ONLY                Page 3

subsequent lawsuit on the same claim or cause of action or raising a new defense to defeat a prior judgment." *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 918 F.2d 658, 660 (6th Cir.1990) Claim preclusion often is applied in the bankruptcy context. In cases in which a party raises a modification motion or appeals a discharge, there is no identity of claims, and claim preclusion is not appropriate. Unlike claim preclusion, § 1327 does not bar the entire action. Preclusion under § 1327 is somewhat harsher than common law issue preclusion, however. At common law the litigation of an issue is precluded only if that issue was actually litigated and decided and if the determination of that issue was necessary to the judgment in a previous action between the parties. *See Gargallo,* 918 F.2d at 661. Under § 1327, as it has been interpreted, an issue is precluded if it *could have been decided* at confirmation, whether or not it was actually decided.

**\*3** This court has held that the analogous provision of Chapter 11, § 1141, [FN2] "bar[s] relitigation of any issues raised or that could have been raised in the confirmation proceedings." *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.),* 930 F.2d 458, 463 (6th Cir.1991). When a creditor appeals a Chapter 13 discharge, we believe that the language of § 1327 and the need for finality in the multilateral bankruptcy context similarly bar the introduction of issues that could have been raised at confirmation. Utilizing the more relaxed common law issue preclusion standard, by comparison, would allow certain creditors to raise claims against the bankruptcy estate collaterally that could and should have been raised in the confirmation process, but were not actually litigated or decided at that stage. Such a result would be contrary to the design and intent of the Bankruptcy Code. [FN3]

> FN2. 11 U.S.C. § 1141(a) provides in pertinent part that "the provisions of a confirmed plan bind the debtor ... and any creditor ... whether or not such creditor ... has accepted the plan."

> FN3. Despite the binding effect of confirmation, we note that debtors or creditors may resort to the courts to "resolve disputes as to the rights of the parties" with regard to ambiguous provisions of a bankruptcy plan. 8 COLLIER ON BANKRUPTCY, *supra,* ¶ 1327 02, at 1327-4. Cline does not argue in her appellate brief that any provision of the Modified Plan is ambiguous, however. Thus, she has waived this argument.

C. Application of Preclusion Principles to Cline's Appeal

Cline argues that the district court erred in holding that res judicata barred her challenge to the debtors' lump sum prepayment and discharge. We are not confident that this is an accurate characterization of the district court's holding, [FN4] but addressing the preclusion issue de novo, as we are required to do, we hold that the issues that Cline raises on appeal could have been raised at confirmation and are precluded now.

> FN4. It appears to us that the district court merely held that, because Cline appealed the plan discharge rather than the confirmation of the Modified Plan, res judicata barred any allegation that the plan was not proposed in good faith or that the plan failed the disposable income test. The district court appeared to reject the prepayment claim on the merits. J.A. at 316 (Mem.Op.).

As an initial matter, we note that Cline's appeal of the debtors' discharge is not precluded in its entirety under the common law doctrine of claim preclusion. A claim that a discharge was improperly granted involves different factual issues and is distinct from a claim that a confirmation order was improperly granted. We agree with the district court, however, that Cline cannot "challenge whether the Plan was proposed in good faith or met the disposable income test." J.A. at 316 (Mem.Op.). Both of these issues could and should have been raised at confirmation and, thus, are barred under § 1327. In fact, given Cline's objection to the Modified Plan proposed by the debtors, resolution of both of these issues was necessary to the bankruptcy court's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
1998 WL 773999 (6th Cir.(Tenn.))
**Unpublished Disposition**
**(Cite as: 1998 WL 773999 (6th Cir.(Tenn.)))**

FOR EDUCATIONAL USE ONLY    Page 4

confirmation of that plan.

In appealing the grant of a discharge to the debtors, however, Cline's central complaint is that prepayment was not permitted under the plan and that such prepayment constituted a modification to that plan. Whether prepayment was permitted under the plan is purely a legal question, and we see no reason that this question could not have been decided at confirmation. The confirmed plan is designed to set out the "rights and liabilities of the parties." 8 COLLIER ON BANKRUPTCY, *supra,* ¶ 1327.02, at 1327-3. One of the rights at issue in this case was the debtors' right to prepay. Had Cline appealed the confirmation order alleging that the confirmed plan permitted prepayment in violation of Code provisions, the district court and, perhaps this court, would have been forced to address whether the plan as confirmed did provide the debtors with a right to prepay and, if so, whether such a right violated the Code. [FN5] We conclude, therefore, that, because the debtors' ability to prepay their obligations under the plan was an issue that could have been appealed at confirmation, Cline is precluded from raising this issue in her appeal of the debtors' discharge. [FN6]

> FN5. We recognize that Cline may have been misled by the bankruptcy court's handling of the prepayment issue. The bankruptcy court stated in a hearing on the matter that it could not rule on the debtors' "attempt to prepay the plan before the plan is confirmed," J.A. at 182, that the "issue before the Court today is not prepayment," J.A. at 175, and that it would rule on the question of prepayment in a subsequent hearing. J.A. at 190. With respect, we believe the bankruptcy court erred. As we have noted, it is well settled that confirmation is a binding determination of the parties' rights. As Cline objected to prepayment, the bankruptcy court should have ruled whether prepayment under the Modified Plan was permissible before confirming that plan. Cline is also charged with awareness of the law, however, and Cline should have realized that confirmation was binding as to this issue and should have appealed the confirmation

to resolve her objections.

In this respect the cases cited by the dissent are inapposite *Predmont Trust Bank v. Linkous (In re Linkous),* 141 B.R. 890 (W.D.Va.1992), *aff'd,* 990 F.2d 160 (4th Cir.1993), and *In re Beard,* 112 B.R. 951 (Bankr.N.D.Ind.1990), for example, involved challenges to the validity of specific claims or liens that genuinely were not mature at the time of confirmation or that could not have been raised except through an adversary proceeding. Although the bankruptcy court may have suggested otherwise, we believe that the generalized prepayment issue was mature for decision at confirmation and was resolvable as a contested matter without an adversary proceeding. Moreover, we are not persuaded that the allegedly erroneous legal determinations of the bankruptcy court deprived Cline of an effective opportunity to appeal and constituted a deprivation of due process. In any event, Cline has not alleged a due process violation in her brief to this court, and we consider the argument forfeited.

> FN6. Given our determination that Cline's arguments in this appeal are precluded under § 1327, we do not address the validity of this plan or of prepayment under this plan. We do believe, however, that the cautionary note struck by the Seventh Circuit regarding a similar plan bears repeating here. Like the Seventh Circuit, we find "troubling" the approval of a "percentage plan" in a case in which a creditor has objected to confirmation and has triggered the 11 U.S.C. § 1325(b) requirement that the debtors contribute their entire disposable income for at least three years to the plan. *See In re Witkowski,* 16 F.3d 739, 746 n. 11 (7th Cir.1994).

Unlike the dissent we do not believe that equitable considerations warrant reversal. The discrepancies and excessive exemptions that the dissent finds in the debtors' filings bear on the question of whether the debtors' plan was offered in good faith. Cline could have argued before

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                    FOR EDUCATIONAL USE ONLY                                    Page 5
1998 WL 773999 (6th Cir.(Tenn.))
**Unpublished Disposition**
**(Cite as: 1998 WL 773999 (6th Cir.(Tenn.)))**

the bankruptcy court and, if necessary, on appeal of confirmation that the plan was not proposed in good faith or that the plan did not satisfy the disposable income test. Cline did not do so, and this very separate issue should not cloud our response to the present appeal.

### III. CONCLUSION

*4 The only substantive issue raised by Cline's appeal is the question of the debtors' ability to prepay their obligations under the Modified Plan. As we have determined that 11 U.S.C. § 1327 precludes this issue from being raised on the appeal of the debtors' discharge, the bankruptcy court's grant of the debtors' discharge pursuant to 11 U.S.C. § 1328(a) must be upheld. For the foregoing reasons we AFFIRM the judgment of the district court dismissing Cline's appeal and affirming the Welches' discharge.

HARRY    W.    WELLFORD,    Circuit    Judge, dissenting.

HARRY W. WELLFORD, Circuit Judge.

I respectfully dissent from the disposition of this case based not only on legal grounds, but on strong equitable considerations as well. The district court erred in its application of the *res judicata* doctrine by ignoring the fact that the lump-sum payment issue was not decided at confirmation. Since it was not decided at confirmation, due to the bankruptcy court's insistence that it should be decided later, the appellant cannot be barred from asserting its claim now. In addition, a detailed examination of the circumstances of this controversy bear out my view that the debtors were inconsistent, indicated varying information, and may be viewed as not being forthright with the bankruptcy court as to their purposes under Chapter 13.

There are three reasons why the district court erred in not taking into account the fact that the lump-sum payment was not decided at confirmation. First, it is well-settled that issues that were not mature at the time of confirmation are not barred from relitigation, thus, only matters decided in the plan are barred from *res judicata. See In re Linkous,* 141 B.R. 890, 898 (W.D.Va.1992) (holding that statute

providing that confirmed Chapter 13 plan is binding on both debtors and creditors generally does provide *res judicata* effect for terms of confirmed plan, but that effect is premised on notion that bankruptcy court has addressed in confirmed plan and order only those issues that are properly within scope of confirmation hearing; issues that were not mature for decision and could not appropriately be resolved in confirmation or in order confirming plan are not barred from further litigation), *affirmed In re Linkous,* 990 F.2d 160 (4th Cir.1993) (confirmation order is generally treated as *res judicata* as to all matters decided in plan); *Russo v. Seidler (In re Seidler),* 44 F.3d 945, 948 (11th Cir.1995) (holding that "[w]hile section 1327(a) may have a *res judicata* effect as to certain issues which were or should have been addressed in the confirmation process, we have found no authority indicating that section 1327 is capable of mooting an appeal of issues not decided within the confirmation order"); *In re Harlan,* 783 F.2d 839 (9th Cir.1986) (holding that because there was no apparent defect to which objection could have been made prior to confirmation, *res judicata* did not apply); *In re Bonanno,* 78 B.R. 52 (Bkrtcy.E.D.Pa.1987) (holding that upon confirmation of Chapter 13 plan, creditor is bound to any plan provision involving matters which might permissibly [FN7] have been resolved through confirmation process). In the instant case, the bankruptcy court explicitly stated that the issue of lump-sum payments was not mature prior to confirmation, and would be decided after confirmation, setting out that "[t]he next procedural step would be once you're able to get a plan confirmed, it is simply a motion to pay off the plan, which would come up on a Thursday, and the Court would be in a position to rule on that motion"). The bankruptcy judge also stated:

> FN7. As noted below, the bankruptcy court in the instant case did not allow the matter of a lump-sum payment to be resolved prior to confirmation.

*5 I know, but [the debtors' prepayment is] not before me now. I mean I don't see how I can give you an advisory ruling on that now. How would that be appealed? [FN8] I mean what's before me now is this plan and I can't confirm the plan with

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                          FOR EDUCATIONAL USE ONLY                          Page 6
1998 WL 773999 (6th Cir.(Tenn.))
**Unpublished Disposition**
**(Cite as: 1998 WL 773999 (6th Cir.(Tenn.)))**

the supplement.

> FN8. This remark by the bankruptcy court demonstrates that it intended for its ruling on the lump-sum payment issue to be appealed. The bankruptcy court further stated that "[w]ell, it seems to me that procedurally this is what would have to happen to get a court ruling that could be appealed on the issue [of the pre-payment of Chapter 13]." J.A. at 179-180.

\* \* \*

You may think that I'm making you jump through procedural hoops and I'm doing so because I don't think that I can rule on your attempt to prepay the plan before the plan is confirmed and you attempt to do so.

\* \* \*

Yeah, I've confirmed the plan. We've completed that here. The only other remaining issue is whether they can pay off their plan early.

Indeed, the bankruptcy court explicitly rejected the debtors' supplement to the Modified Plan specifying an intent to make a lump-sum payment, imposing a percentage plan instead. [FN9] Only after the confirmation did the bankruptcy court decide the lump-sum payment issue, at which time the appellant did object. It defies common sense for this court to require that the appellant object [FN10] before confirmation when the bankruptcy court continually told her that she should wait until after confirmation because the issue was not mature yet, it is clear that the correct result is to hold that *res judicata* does not bar appellant's claim.

> FN9. In addition, the bankruptcy judge stated: "[d]ebtor's plan, a copy of which is attached hereto, is confirmed except that the supplement to the plan is stricken."

> FN10. Indeed, a strong argument can be made that the appellant did object prior to confirmation. Though the bankruptcy court did not allow a formal objection, the appellant certainly made it known on numerous occasions that it objected to the lump-sum payment. Appellant's counsel was even allowed to put on proof in

opposition to the motion for lump-sum payment.

The bankruptcy court viewed the confirmation of the Modified Plan and the lump-sum payment issue as two separate issues. This explains why the appellant did not object to the confirmation, but did object to the lump-sum payment. If confirmation and the lump-sum payment issue should not have been treated separately, then we should certainly not punish the appellant for the bankruptcy court's error.

Second, when an issue must be litigated in an adversary proceeding, that issue is not part of the confirmation process until it is actually litigated. *See In re Beard,* 112 B.R. 951, 956 (Bankr.N.D.Ind.1990) ("[i]f an issue must be raised through an adversary proceeding it is not part of the confirmation process and, unless it is actually litigated, confirmation will not have a preclusive effect"); *see also Cen-Phen Corporation v. Hanson,* 58 F.3d 89, 93 (4th Cir.1995) (quoting above). Since the bankruptcy court in the instant case led the appellant to believe that this issue would have to be litigated in an adversary proceeding, [FN11] and since the result of this adversary proceeding came down after confirmation, the lump-sum payment issue was not part of the confirmation, and, thus, not barred by *res judicata* here.

> FN11. *See* J.A. at 189-90 (quoting bankruptcy court as stating, "Well, to accommodate counsel and the parties, Mr. Van Cleave, I will allow you but not require you to put on any proof in support of your motion to prepay this plan. If you want to simply file your motion and not rely on any proof, that's up to you to do that. And I'll give Mr. North an opportunity to put on any proof that he desires in opposition to your motion. And then what I plan to do is to allow you to file your motion after this proceeding but I'm not going to rule on that motion until some Thursday. We will have Mr. Still here and I will give you my ruling some Thursday, and I'll try to accommodate counsel to hold this hearing when both of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FOR EDUCATIONAL USE ONLY                              Page 7

you have other matters scheduled on Thursday afternoon.").

Third, in order for a proceeding to be accorded finality and pass due process muster, the notice requirement must be met. Part of this notice requirement is an opportunity for a party to make an objection prior to a decision being made. *See Spartan Mills v. Bank of America Illinois,* 112 F.3d 1251, 1257 (4th Cir.1997) (holding that "[d]ue process requires that in order for a proceeding to be accorded finality, notice must be given that is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" ') (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). No such opportunity was available in the instant case for the appellant on the lump-sum payment issue, since the bankruptcy court stated that a decision would be made only after confirmation.

*6 Thus, appellee's application to complete plan by lump-sum payment can be viewed as a modification to the Modified Plan that was originally confirmed, although it is unclear whether the bankruptcy court saw it as such. It is well-settled that if a plan is modified after confirmation, *res judicata* does not apply prior to the modification. *See Ledford v. Brown (In re Brown),* 219 B.R. 191, 194-95 (6th Cir.BAP1998) (holding that "[m]odification of a plan is essentially a new confirmation ... [and] must be consistent with the statutory requirements for confirmation"); *In re Witkowski,* 16 F.3d 739 (7th Cir.1994) (*res judicata* does not apply to § 1329 modifications); *In re Martin,* 130 B.R. 951 (Bkrtcy.N.D.Iowa 1991) (holding that confirmed Chapter 12 or Chapter 13 plan provides binding, *res judicata* effect unless and until it is modified). Since the appellant in the instant case did formally object at the time of appellee's motion, *res judicata* should not apply.

There are also strong equitable considerations that the district court failed to address as well. The debtors appear, at least from the record before us, to have engaged in a persistent failure to be forthright. These considerations, in my view, also weigh heavily in favor of this court holding that 11 U.S.C.

§ 1327 does not bar consideration of the issue raised in the appeal.

One consideration is the numerous discrepancies between the two petitions filed by the debtors According to the two petitions filed by the debtors, there was an increase of monthly expenditures by over fifty percent in a mere nine months, from $2490 in January, 1993, to $3,554 in October, 1993. [FN12]

> FN12. The monthly expenditures are itemized, and include in the second petition an increase of $250 a month in home maintenance, an increase of $50 a month in food, an increase of $50 a month in clothing, an increase of $50 a month in medical and dental expenses, an increase of charitable contributions by $40 a month (one would think that the bankruptcy trustee and/or the court would question paying charity, while omitting payment of about three-quarters of the unsecured Cline obligation), and an increase of $70 a month in "school lunches, etc."

The original proposal of the Welch's was to pay Cline a $3,000 lump sum payment, about 18% of the debt due. All other creditors were to be paid outside the plan. This increase in expenses just happened to coincide with an almost identical increase in income, which went completely unexplained. In another discrepancy, the bankruptcy petition filed by the debtors in January, 1993, reflected that debtors owned in fee simple real property which they valued at $180,000. In the October, 1993 petition, however, debtors without explanation re-valued the real property at $100,000. This apparent disparity between the two petitions casts doubt on the authenticity of the debtors' claims.

We should also note the nature and number of exemptions the debtors listed on their petition. In their second petition, the debtors listed three bank accounts, numerous household and personal assets of approximately two thousand dollars, and cash value of life insurance of $3,000. They also listed six vehicles and accessories, including a van, camper, two all-terrain vehicles (ATVs), and two automobiles with substantial values, as well as a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
1998 WL 773999 (6th Cir.(Tenn.))
**Unpublished Disposition**
**(Cite as: 1998 WL 773999 (6th Cir.(Tenn.)))**

Honda lawnmower with a not insubstantial value. However, they claimed as exempt the van, the four-wheelers, the cars, the cash value of insurance, four television sets, the three bank accounts, the lawnmower, the camper and numerous appliances, a $7500 exemption on the homeplace which included a swimming pool, and all household and personal effects.

*7 It is important also to consider the repeated efforts of the debtors to avoid making a substantial payment on the Cline indebtedness. Initially, they proposed to pay $200 a month, or about 4% of their income, and to pay others, besides Cline and Welch, outside the plan. This was not approved. Next, they proposed to pay all creditors outside the plan except Cline and to pay her about 17% of her claim with a lump sum payment through the assistance of Robert Welch. The objections of Cline and the trustee were sustained to this proposed plan and the case was dismissed. The debtors filed another Chapter 13 petition increasing their monthly payments to about $350 for sixty months to go to unsecured creditors, or until they were paid, if in less than five years. Next, with the assistance of the parent, the debtors tendered approximately $18,000, claimed to be the remaining balance over the period of the plan, to the trustee for a discharge. The trustee requested instructions from the bankruptcy court on this proposal. The debtor testified that he considered the money received from his relatives to make the lump-sum payment to be a gift but that he hoped to repay it. The bankruptcy court heard testimony from the debtors that the wife would be going back to work, thereby indicating an increased source of income from which future payments might be made. The bankruptcy court, in light of this testimony, did not permit the lump-sum payment.

Once again, the debtors pursued a modified plan offering to pay $21,000 to unsecured claimants in monthly payments of about $350. The payment would be made in a lump-sum with the money which the debtors considered to be a gift from the parent. Welch indicated, in February, 1995, that he was now (in 1994), earning about ten percent more in gross income, excluding income, if any, earned by Mrs. Welch. The same day, however, the court confirmed this last plan but striking the lump-sum pay supplement portions. In March, 1995, the

debtors moved to make the lump-sum payment, previously proposed, and Cline objected in a timely fashion once again. The court entered an order striking this latest motion application on March 3, 1995, but, nevertheless, discharged Welch "after completion of their Chapter 13 plan" on April 20. Cline filed a notice of appeal on April 25, 1995.

The bankruptcy judge may well be viewed as misleading Cline in his denial of the debtors' attempts to make a lump-sum payment from a family source which Mr. Welch indicated he intended to repay, and then discharging the debtors after a lump-sum payment, but indicating that this discharge was based upon "completion of their Chapter 13 plan," which specifically indicated monthly payments to be made over a sixty month period. If the debtors continued and maintained their modified monthly payment during that five year period, Cline had the right to seek increased monthly payments if she could show increased income or receipt of other benefits or assets by the debtors. Mr Welch was apparently continually earning more money during the period the matter was before the court, and it was indicated that Mrs. Welch was going to work to augment their financial situation.

*8 Under all of the circumstances, both legal and equitable, I would not hold that the issues raised by Cline on appeal are precluded. This record cries out, indeed, for explanation and clarification of the confirmation and discharge granted by the bankruptcy court. The majority sets out that the bankruptcy court indicated approval of a 27% pay-out, but this was to be done "in deferred cash payments" under the modified plan. Nowhere did the bankruptcy court properly, and with notice, authorize a lump-sum payout.

I would hold that the appeal in this case from the discharge of debtors was a proper one which we should consider. The discharge was based upon a lump-sum payment not a part of the Chapter 13 plan and this mode of payment was never approved by the bankruptcy court prior or during confirmation. Under the circumstances of this case, I would not hold that 11 U.S.C. § 1327 bars or precludes consideration of the issue raised in the appeal. The effect of the majority decision is to cut off any

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FOR EDUCATIONAL USE ONLY                    Page 9

opportunity of Cline to seek a modification for increased payments based on the real potentiality of increased earnings by the debtors. *See, e.g., In re Arnold,* 869 F.2d 240 (4th Cir.1989).

Accordingly, I DISSENT.

1998 WL 773999 (6th Cir.(Tenn.)), Unpublished Disposition

**Briefs and Other Related Documents (Back to top)**

. 97-5080  (Docket)
                    (Jan. 21, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.