UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


NO. 1:05-cv-10226-WGY

---

JEAN MILES,
APPELLANT


v.


BENEFICIAL MASSACHUSETTS, INC.,
APPELLEE

---

REPLY BRIEF
APPELLANT JEAN MILES

---

Kimberly Breger
BB0# 600925
Legal Services Center of
Harvard Law School
122 Boylston Street
Jamaica Plain, MA  02130


Paul Collier, III
BBO# 092040
Law Offices of Paul Collier
675 Massachusetts Ave.
Cambridge, MA 02139

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...........................................................................................................1

II.  BENEFICIAL CANNOT AND DOES NOT EVEN ARGUE THE NECESSARY
SHOWING OF A VALID SECURED INTEREST IN DEFENDING THE LIFTING OF
THE AUTOMATIC STAY ..............................................................................................1

    A.  Beneficial Denied that the Loan Documents at Issue Supporting their Motion for
        Relief from Stay were Valid……………………………………………………1

    B.  Beneficial Fails to Even Address the Invalidity of the Loan Documents at Issue
        in Appellee's Brief……………………………………………………………3

III.  BENEFICIAL CANNOT AVOID THE *RES JUDICATA* EFFECT OF ITS PRIOR
INACTION .......................................................................................................................4

    A.  Beneficial Does Not and Cannot Claim To Have Lacked Knowledge of the Effect
        of Debtor's Plan……………………………………………………………4

    B.  Beneficial Claims Inapposite Support from Requirements of §1327……………..5

IV. GIVEN ITS OWN BINDING, BUT ERRONEOUS, REPRESENTATIONS TO
DEBTOR'S COUNSEL AND THE COURT BELOW, THE COURT SHOULD REJECT
BENEFICIAL'S EFFORTS TO PUNISH DEBTOR WITH ITS UNDISCLOSED PROOF
OF CLAIM. ......................................................................................................................7

V.  BENEFICIAL CANNOT AVOID THE EFFECT OF THE STANDARD APPLICABLE
TO A RECONSIDERATION MOTION. ........................................................................8

CONCLUSION ...................................................................................................................9

# TABLE OF AUTHORITIES

## CASES

In re Andersen, 179 F.3d 1253 (10th Cir. 1999)................................................................6

Bilal v. Household Fin. Corp. III, 296 B.R. 828 (Bankr. D. Kan. 2003) ...........................6

Cen-Pen Corp. v. Hanson, 58 F.3d 89 (4th Cir. 1995) ...................................................6,7

Colonial Mtge. Corp. v. Washington Mutual Bank, 324 F3d 12 (1st Cir. 2003) ............2

EnvisioNet Computer Servs., Inc. v. ECS Funding LLC, 288 B.R. 163  (D. Me. 2002) ..............7

Fili v. Factors Funding Co. (In re Fili), 257 B.R. 370 (1st Cir. BAP 2001) .................6

Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989) ...............................................6

Grella v. Salem Five Cent Bank, 42 F3d 26 (1st Cir 1994) .......................................3

Justina v. Zayas, 875 F. 2d 986, 989-990, and n.3 (1st Cir. 1989) .............................2

In Matter of Gregory, 705 F.2d 1118 (9th Cir. 1983) ...............................................4

In re Harvey, 213 F.3d 318 (7th Cir. 2000) ...........................................................5

Karaha Bodas Co. v. Perusahaan Perambangan Minyak Dan Gas Bumi Negara, 2003 U.S. App.
Lexis 27765 (5th Cir. 2003). .................................................................................2

In re Mammel, 221 B.R. 238 (Bankr. N.D. Iowa 1998) ...........................................5

In re Myers, 175 B.R. 122 (Bankr. D. Mass 1994) .................................................4

In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 802 (E.D. Pa. 1986) ...................4

New Hampshire v. Maine, 532 U.S. 742, 750 (2001) ...............................................2

NPR, Inc. v. Am. Int'l Ins. Co. of P.R., 262 F. Supp. 2d 3 (D.P.R. 2003) ...................8

Patriot Cinemas, Inc. v. General Cinema, Inc., 834 F2d. 208 (1st Cir. 1987) ............2

In re Ruehle, 307 B.R. 28 (6th Cir. BAP 2004)......................................................5

Verge v. U.S. Postal Serv., 965 F. Supp. 112 (D. Mass. 1996) ................................7

In re Wang Labs., 1996 WL 87050 (D. Mass. Jan. 4, 1996) ...................................3

In re Whitley, 177 B.R. 142 (Bankr. D. Mass. 1995) ..............................................4

## STATUTES

11 U.S.C. § 362...............................................................................................3

11 U.S.C. § 523(a)(8)........................................................................................5

11 U.S.C. § 1327..............................................................................................5

15 U.S.C. § 1601, et seq. ..................................................................................3

M.G.L.c.140D ................................................................................................3

**I. INTRODUCTION**

Throughout the course of Appellant-Debtor Jean Miles' ("Debtor") bankruptcy, Appellee Beneficial Massachusetts, Inc. ("Beneficial") has failed to address its primary obligation in pursuing relief from the automatic stay: the burden to establish the validity of its security interest.  Beneficial failed to object to Debtor's Chapter 13 plan, wrongly represented to the Bankruptcy Court and Debtor's attorney that Beneficial never filed a proof of claim, and failed to object to Debtor's forced proof of claim. Even when it belatedly presented its claims to the court, Beneficial left unaddressed the record evidence detailing its illegal lending practices, and the invalidity of its lien.

Instead of addressing its failure to meet the burden of showing that it held a valid, secured interest, Beneficial simply reiterates that its lien is unaffected by these proceedings: despite contrary authority, its own submission to a determination of lien validity by its proof of claim, and the pending adversary proceeding to settle the invalidity of its lien and recover damages.  Beneficial now seeks to justify this by reference to its "unobjected to" proof of claim: ignoring both its own, binding representations to the court and Debtor's counsel that no such proof had been filed, and decisional authority holding that Debtor should not be penalized for the failure of the electronic filing system to search out and record Beneficial's proof.

**II.  BENEFICIAL CANNOT AND DOES NOT EVEN ARGUE THE NECESSARY SHOWING OF A VALID SECURED INTEREST IN DEFENDING THE LIFTING OF THE AUTOMATIC STAY.**

**A.  Beneficial Denied that the Loan Documents at Issue Supporting their Motion for Relief from Stay were Valid**

In another of Beneficial's unique litigation strategies, in response to the Debtor's Adversary Complaint, Beneficial **denied** that the loan documents attached to its Motion for

Relief from Stay were the loan documents for its loan to the Debtor. (See Beneficial's Answer to Adversary Proceeding Complaint ¶48: **"Beneficial denies that the correct loan agreement was annexed to the Motion to Lift Stay".).**[1]

  Taking judicial notice of Beneficial's denial would alone compel reversal of the Motions' allowance on grounds of judicial estoppel, which prohibits Beneficial's reliance on these documents in its Motion to Lift Stay, where it subsequently repudiates those same documents in the pending Adversary Proceeding:

> …the doctrine (of judicial estoppel) precludes a party from
> asserting a position in one legal proceeding which is contrary to a
> position it has already asserted in another.

Patriot Cinemas, Inc. v. General Cinema, Inc., 834 F2d. 208 at 212 (1st Cir. 1987), *cited with approval,* New Hampshire v. Maine, 532 U.S. 742, 750 (2001); Colonial Mtge. Corp. v. Washington Mutual Bank, 324 F3d 12, 18 (1st Cir. 2003) ("we generally will not permit litigants to assert contradictory positions at different stages of a lawsuit to advance their interests".).  As Beneficial's Answer had not been filed at the time of the lower court ruling, it may be appropriate to remand this issue to the court below, to permit that court to determine the impact which Beneficial's repudiation of its own filings should have on Beneficial's Motion to Lift Stay. Justina v. Zayas, 875 F. 2d 986, 989-990, and n.3 (1st Cir. 1989); Karaha Bodas Co. v. Perusahaan Perambangan Minyak Dan Gas Bumi Negara, 2003 U.S. App. Lexis 27765 (5th Cir. 2003).

---

[1] Beneficial's Answer ¶48 was in response to ¶48 of Plaintiff's Complaint which stated: "Furthermore, annexed to Beneficial's Motion to Lift Stay, filed on July 12, 2004, is a copy of the Loan Agreement allegedly executed with Ms. Miles. See, Loan document, annexed hereto as Exhibit "B".

**B.  Beneficial Fails to Even Address the Invalidity of the Loan Documents at Issue in Appellee's Brief**

Beneficial's statement admitting to the invalidity of its loan documents notwithstanding, Beneficial "attacks" the Debtor's failure to file an Adversary Proceeding to justify its foreclosure of her home – without even a single sentence addressed to Beneficial's burden to establish that its so-called "security interest" is legally valid.[2]  Simply ignoring the presumptive right to an automatic stay (11 U.S.C. §362), and ignoring the facial defects in the very loan documents Beneficial filed in support of the Motion for Relief from Stay, does not and cannot satisfy Beneficial's burden:

> The party seeking relief from the stay has the initial burden to show that cause exists to warrant relief. If the movant fails to make this initial showing, then the court should deny relief without requiring any showing from the debtor that continued protection is necessary.

In re Wang Labs., 1996 WL 87050, at *5 (D. Mass. Jan. 4, 1996); Grella v. Salem Five Cent Bank, 42 F3d 26, 33 (1st Cir 1994) (Stay proceeding "…analogous to a preliminary injunction hearing, requiring a … determination of the reasonable likelihood that a creditor has a legitimate …lien.").

Still, below and here, Beneficial has never actually addressed or given an explanation for the significant record evidence that its lien is invalid, and its debt, therefore, unsecured.  That evidence demonstrates that Beneficial engaged in numerous practices in violation of the federal Truth-in-Lending Act, 15 U.S.C. § 1601 et. seq., the Massachusetts Consumer Credit Cost Disclosure Act, M.G.L. c.140D, and various common law doctrines of the Commonwealth that

---

[2] Beneficial's "attack" strategy seems particularly ill-fated given that the Debtor had actually filed an Adversary Proceeding while these matters were pending before the court below.  Even more striking was Beneficial's insistence in the bankruptcy that the Bankruptcy Court lacked the jurisdiction to entertain the very Adversary Proceeding which Beneficial had demanded be filed. See Beneficial Motion to Dismiss or Abstain, denial by Order of the Bankruptcy Court on March 15, 2005, Docket #04-01421.

give rise to recission.[3] Moreover, Beneficial left unaddressed the apparent facial invalidity of the loan documents it attached to its Motion for Relief from Stay: loan records facially invalid given their inconsistent loan numbers and closing dates. And Beneficial made no legal argument that these unrefuted facts do not vitiate its lien.

This Court should hold that, given Debtor's notice of her rescission of her loan,[4] and her inclusion of the loan proceeds to Beneficial through her bankruptcy plan, no valid lien existed after confirmation.[5]

### III.  BENEFICIAL CANNOT AVOID THE *RES JUDICATA* EFFECT OF ITS PRIOR INACTION.

#### A.  Beneficial Does Not and Cannot Claim To Have Lacked Knowledge of the Effect of Debtor's Plan

As Debtor's underlying brief clearly demonstrated, the critical question for due process is whether *the party* in question—here Beneficial—received adequate notice that its rights may be affected.  See Matter of Gregory, 705 F.2d 1118, 1123 (9th Cir. 1983) ("[w]hatever is notice enough to excite attention and put *the party* on *his* guard and call for inquiry is notice sufficient of every thing to which such inquiry may have led."  (emphasis added)). But Beneficial ignored this case-dependant nature of due process and instead responded with a hypothetical examination

---

[3] Beneficial suggested that Debtor's predatory lending claims should not be considered because they were not presented below until her adversary proceeding was filed. (Appellee's Brief 1-2) This is simply false.  Debtor properly raised all of these arguments below -- most directly in Debtor's July 26, 2004 Memorandum of Law in Support of Opposition to Motion of Beneficial Massachusetts Inc. for Relief from Stay -- putting these issues squarely before the Bankruptcy Court in its initial consideration of Beneficial's motions.

[4] Beneficial sought in its brief to deny rescission on the basis of a December 8, 2003 letter, (Appellee's Brief 2 n.1). Not only was Beneficial's response legally and factually erroneous, but it was never provided to the Bankruptcy Court. In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 802 (E.D. Pa. 1986) ("[i]tems not before the Bankruptcy Court and not considered by it in rendering its decision may not be included in the record".)

[5] While Beneficial stated that "[a]t no time did Debtor tender funds in connection with her attempted rescission." (Appellee's Brief 2 n.1), the funds that Debtor included as the unsecured debt owed to Beneficial in her bankruptcy plan were exactly this tender.  This is the legally proper way to return the proceeds of loan for a bankrupt mortgagor exercising rescission.  See, e.g., In re Whitley, 177 B.R. 142, 152-3 (Bankr. D. Mass. 1995), In re Myers, 175 B.R. 122, 128-29 (Bankr. D. Mass. 1994).  Once in bankruptcy, Debtor had no way to tender payment to Beneficial except through its bankruptcy plan. And not only did Debtor provide for Beneficial's lien, but Beneficial accepted the treatment the Debtor's plan provided when it negotiated the plan payments made to date through the bankruptcy trustee.

of due process rights in bankruptcy confirmation and chose to analyze Debtor's claim as a run-of-the-mill "discharge by declaration" effort.[6]  Beneficial cannot be allowed to avoid the effect of its failure to pay attention by unfairly slapping a pejorative label on Debtor's motives.

Given the numerous communications Beneficial received from the Debtor—the letter of rescission, the copy of the bankruptcy plan, the notice that Debtor had filed a forced proof of claim—it was fully aware that her confirmed Chapter 13 plan treated the mortgage as rescinded and the debt as unsecured.  Debtor's plan apprised Beneficial of the potentially controversial nature of her plan and thereby the need to protect its claims, by specifically denoting that the treatment of the mortgage as unsecured was based on "alleged" and "disputed" conduct that likely would have to be resolved by litigation.  Both in the Bankruptcy Court and in its brief, Beneficial has not -- and indeed cannot -- claim that it was unaware that Debtor's plan would treat its loan as rescinded and unsecured:  instead insisting it was "entitled" to ignore the notice provided by Debtor's plan.[7] (Appellee's Brief 12)  But this simply runs counter to bankruptcy jurisprudence: "A creditor *is not entitled* to stick his head in the sand and pretend it would not lose any rights by not participating in these proceedings."  In re Harvey, 213 F.3d 318, 322 (7th Cir. 2000) (emphasis added).

### B. Beneficial Claims Inapposite Support from Requirements of § 1327

Debtor's underlying brief both demonstrated that courts across the country have adopted a range of standards for determining whether a Chapter 13 plan provides for a debt as required

---

[6] Moreover, both In re Ruehle, 307 B.R. 28 (6th Cir. BAP 2004), and In re Mammel, 221 B.R. 238 (Bankr. N.D. Iowa 1998), cases that Beneficial heavily relies upon to provide support for its positions about "discharge by declaration," involve the unique context of educational debt that statute dictates can only lose secured treatment based on a finding of "undue hardship" to debtors.  See 11 U.S.C. § 523(a)(8).  Beneficial provided no reason why these cases would apply in a different context.

[7] Moreover, part of Beneficial's claimed entitlement—based on a supposed requirement that the disputed right of third parties be decided exclusively through adversary proceedings rather than plan confirmation (Appellee's Brief 12)—is based on a conclusion that is incorrect as a matter of law. Beneficial's expectation of notice not required by law cannot be held against the Debtor.

by 11 U.S.C. §1327 and that Debtor's plan met any of those standards.  Ignoring these standards,

Beneficial chose to tie its fate to <u>Cen-Pen Corp. v. Hanson</u>, 58 F.3d 89 (4th Cir. 1995).

However, <u>Cen-Pen</u> is *not* the law in the First Circuit, and its reasoning has been rejected by

numerous other circuits and this Circuit's own Bankruptcy Appellate Panel.  <u>See, e.g.</u>, <u>In re</u>

<u>Anderson</u>, 179 F.3d 1253, 1257 (10th Cir. 1999) ("[w]e do not believe that [creditor] can now

excuse…failure to protect its interests by arguing that [debtor] failed to prove [its claims] in an

adversary proceeding. This argument should have been raised in a timely filed objection to the

plan prior to confirmation, or argued subsequently in a timely filed appeal attacking the

confirmed plan."); <u>Fili v. Factors Funding Co.</u>, 257 B.R. 370 (1st Cir. BAP 2001); <u>Bilal v.</u>

<u>Household Fin. Corp. III</u>, 296 B.R. 828, 835 (Bankr. D. Kan. 2003).  This court should adopt the

holdings of the bulk of the federal Circuit Courts of Appeal, and this Circuit's Bankruptcy

Appellate Panel:  that *res judicata* prevents a creditor from claiming that a lien secures a debt

after the confirmation of a bankruptcy plan that treated the debt as unsecured.

Equally difficult for the Creditor in this appeal is the recognition in <u>Cen-Pen</u> and other

Fourth Circuit decisions that <u>Cen-Pen's</u> "pass-through-bankruptcy unaffected" doctrine applies

only where the Creditor "… ignore(s) the bankruptcy proceeding and look(s) solely to the lien

for satisfaction of the debt."  <u>Cen-Pen</u> at 94.  Thus, even <u>Cen-Pen</u> provided no shield for

Beneficial after it decided to participate in the bankruptcy proceeding by filing its claim.

<u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33, 57-60 (1989) (submission of claim results in

creditors subjecting themselves to court's equitable powers). And, finally, the last prong of the

<u>Cen-Pen</u> doctrine is that the filing of an adversary proceeding negates any protection otherwise

given the lien: and here, while the action was pending below, and prior to the bankruptcy court's

6

reconsideration decision, Plaintiff's Adversary Complaint was filed.  In short, Beneficial's only

doctrinal rescue, Cen-Pen, provides no protection for its lien.

In any event, contrary to Beneficial's argument and the bankruptcy court's decision, the

Debtor's plan did meet the requirement that the Plan  both "acknowledge" its claim and "make

explicit provision for its treatment."  (Appellee's Brief 8)  Both the plan and Judge Kenner's

confirmation order acknowledged that Debtor owed Beneficial for the loan proceeds it paid.  The

plan made explicit provision for this debt: it would be paid like all other of Debtor's unsecured

debts with a 13% dividend.  Beneficial has effectively asked this Court to find the plan silent

even though Beneficial conceded in its bankruptcy court pleadings that it knew that the claim

was included in Debtor's plan: demanding a finding that a "plan is simply *silent* as to

Beneficial's secured claim and mortgage" because it "*treats Beneficial's claim only* under the

heading of unsecured claims and states that part of the unsecured debt in the case is 'alleged

unsecured claim owed to Beneficial.'" (Appellee's Brief 8 (emphasis added) (quoting Judge

Hillman's order))

## IV. GIVEN ITS OWN BINDING, BUT ERRONEOUS, REPRESENTATIONS TO DEBTOR'S COUNSEL AND THE COURT BELOW, THE COURT SHOULD REJECT BENEFICIAL'S EFFORTS TO PUNISH DEBTOR WITH ITS UNDISCLOSED PROOF OF CLAIM.

Beneficial insists that Debtor's failure to object to Beneficial's proof of claim forecloses

a challenge to the lien's validity. (Appellee's Brief 6-7)  However, Debtor properly relied both

on the Bankruptcy Court's PACER filing system and the written and oral statements of

Beneficial's counsel that Beneficial had never made such a filing.[8]  Debtor was entitled to rely

on these two sources.  See, e.g., EnvisioNet Computer Servs., Inc. v. ECS Funding LLC, 288

B.R. 163, 167 (D. Me. 2002) (noting right to rely on PACER); Verge v. U.S. Postal Serv., 965 F.

---

[8] Beneficial admits to this Court that its counsel was completely unaware of this filing and on several occasions represented to the Debtor and to the Bankruptcy Court that no such filing had been made. (Appellee's Brief 7).

Supp. 112, 119 n.18 (D. Mass 1996) (noting right to treat statement by opposing counsel as a

party admission).  Apparently lacking any contrary judicial authority, Beneficial simply ignores

the problem its own false representations created, and then argues that this Court should permit

the creditor to gain an advantage from its own mistakes. (Appellee's Brief 16-17)  Beneficial

cannot be permitted to use their inaccurate statements and computer errors to their advantage;

had Debtor known at an appropriate time that Beneficial was asserting a secured claim, she

would have challenged that claim.[9]

## V.  BENEFICIAL CANNOT AVOID THE EFFECT OF THE STANDARD APPLICABLE TO A RECONSIDERATION MOTION.

Beneficial admitted that one of the appropriate legal standards "[i]n order to justify a

reconsideration of an order" is the discovery of "some new evidence not previously available."

(Appellee's Brief 16 *quoting* NPR, Inc. v. Am. Int'l Ins. Co. of P.R., 262 F. Supp. 2d 3, 4

(D.P.R. 2003)). And Beneficial did not challenge that the emergence in Judge Hillman's opinion

of the fact that Beneficial had filled a proof of claim—contrary to its counsel's prior assertions to

Debtor and to the court—was "new evidence that was not previously available."  Instead,

Beneficial sidestepped Debtor's clear legal right to reconsideration upon the discovery of new

evidence by insisting that the new evidence here was "irrelevant." (Appellee's Brief 17)

But Debtor's failure to know about this filing was in fact quite determinative in both Judge

Hillman's ruling, which placed great weight on Debtor's failure to commence an adversary

proceeding, (Hillman's Order 12) and Debtor's actions. The only reason that Debtor did not file

such an adversary proceeding was the absence of any challenge by Beneficial to the plan's

treatment of the Beneficial debt as unsecured; Debtor swiftly filed the adversary proceeding once

---

[9] In the same brief arguing that the undisclosed proof of claim should be held to conclusively eradicate all of the Debtor's claims, Beneficial separately insists that the "…existence of a secured proof of claim filed by Beneficial *is simply irrelevant* to the issues on appeal." (Appellee's Brief 16-17 (emphasis added))

Beneficial's proof of claim was disclosed.  Beneficial should not prevail as a result of its repeated misrepresentations.

## CONCLUSION

Based on Debtor's underlying brief and the failure of Beneficial to substantively challenge Debtor's arguments to this Court, Debtor renews her request that this Honorable Court vacate both orders of the Bankruptcy Court, determine that the confirmed plan did affect the validity of Beneficial's lien, determine that Beneficial is an unsecured Creditor, find Beneficial is restricted to the 13% dividend afforded to it as an unsecured creditor pursuant to the Plan, and reinstate the automatic stay.  In the alternative, Debtor respectfully requests that this Honorable Court vacate both orders of the Bankruptcy Court, reinstate the automatic stay, and remand the case to Bankruptcy Court with instructions to stay any decision as to the secured or unsecured status of its lien and any dividend paid thereto pending resolution of the filed adversary complaint and adjudication of claims that the loan was lawfully rescinded.


  /s/ Kimberly Breger_____
Kimberly Breger
BB0# 600925
Legal Services Center of
        Harvard Law School
122 Boylston Street
Jamaica Plain, MA  02130

With permission /s/ Paul Collier
Paul Collier, III
BBO# 092040
Law Offices of Paul Collier
675 Massachusetts Ave.
Cambridge, MA 02139


Dated: April 13, 2005

# APPENDIX OF CITED STATUTES

## 11 U.S.C. § 362. Automatic stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor;  and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay--

(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor;

(2) under subsection (a) of this section--

(A) of the commencement or continuation of an action or proceeding for--

(i) the establishment of paternity;  or

(ii) the establishment or modification of an order for alimony, maintenance, or support;  or

(B) of the collection of alimony, maintenance, or support from property that is not property of the estate;

(3) under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title;

(4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority under the Convention on

the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power;

[**(5) Repealed.** Pub.L. 105-277, Div. I, Title VI, § 603(1), Oct. 21, 1998, 112 Stat. 2681-886]

**(6)** under subsection (a) of this section, of the setoff by a commodity broker, forward contract merchant, stockbroker, financial institutions, or securities clearing agency of any mutual debt and claim under or in connection with commodity contracts, as defined in section 761 of this title, forward contracts, or securities contracts, as defined in section 741 of this title, that constitutes the setoff of a claim against the debtor for a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, arising out of commodity contracts, forward contracts, or securities contracts against cash, securities, or other property held by or due from such commodity broker, forward contract merchant, stockbroker, financial institutions, or securities clearing agency to margin, guarantee, secure, or settle commodity contracts, forward contracts, or securities contracts;

**(7)** under subsection (a) of this section, of the setoff by a repo participant, of any mutual debt and claim under or in connection with repurchase agreements that constitutes the setoff of a claim against the debtor for a margin payment, as defined in section 741 or 761 of this title, or settlement payment, as defined in section 741 of this title, arising out of repurchase agreements against cash, securities, or other property held by or due from such repo participant to margin, guarantee, secure or settle repurchase agreements;

**(8)** under subsection (a) of this section, of the commencement of any action by the Secretary of Housing and Urban Development to foreclose a mortgage or deed of trust in any case in which the mortgage or deed of trust held by the Secretary is insured or was formerly insured under the National Housing Act and covers property, or combinations of property, consisting of five or more living units;

**(9)** under subsection (a), of--

  **(A)** an audit by a governmental unit to determine tax liability;

  **(B)** the issuance to the debtor by a governmental unit of a notice of tax deficiency;

  **(C)** a demand for tax returns;  or

  **(D)** the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor).

**(10)** under subsection (a) of this section, of any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property;

**(11)** under subsection (a) of this section, of the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such an instrument;

**(12)** under subsection (a) of this section, after the date which is 90 days after the filing of such petition, of the commencement or continuation, and conclusion to the entry of final judgment, of an action which involves a debtor subject to reorganization pursuant to chapter 11 of this title and which was brought by the Secretary of Transportation under section 31325 of title 46 (including distribution of any proceeds of sale) to foreclose a preferred ship or fleet mortgage, or a security interest in or relating to a vessel or vessel under construction, held by the Secretary of Transportation under section 207 or title XI of the Merchant Marine Act, 1936, or under applicable State law;

**(13)** under subsection (a) of this section, after the date which is 90 days after the filing of such petition, of the commencement or continuation, and conclusion to the entry of final judgment, of an action which involves a debtor subject to reorganization pursuant to chapter 11 of this title and which was brought by the Secretary of Commerce under section 31325 of title 46 (including distribution of any proceeds of sale) to foreclose a preferred ship or fleet mortgage in a vessel or a mortgage, deed of trust, or other security interest in a fishing facility held by the Secretary of Commerce under section 207 or title XI of the Merchant Marine Act, 1936;

**(14)** under subsection (a) of this section, of any action by an accrediting agency regarding the accreditation status of the debtor as an educational institution;

**(15)** under subsection (a) of this section, of any action by a State licensing body regarding the licensure of the debtor as an educational institution;

**(16)** under subsection (a) of this section, of any action by a guaranty agency, as defined in section 435(j) of the Higher Education Act of 1965 or the Secretary of Education regarding the eligibility of the debtor to participate in programs authorized under such Act;

**(17)** under subsection (a) of this section, of the setoff by a swap participant, of any mutual debt and claim under or in connection with any swap agreement that constitutes the setoff of a claim against the debtor for any payment due from the debtor under or in connection with any swap agreement against any payment due to the debtor from the swap participant under or in connection with any swap agreement or against cash, securities, or other property of the debtor held by or due from such swap participant to guarantee, secure or settle any swap agreement;  or

**(18)** under subsection (a) of the creation or perfection of a statutory lien for an ad valorem property tax imposed by the District of Columbia, or a political subdivision of a State, if such tax comes due after the filing of the petition.

The provisions of paragraphs (12) and (13) of this subsection shall apply with respect to any such petition filed on or before December 31, 1989.

**(c)** Except as provided in subsections (d), (e), and (f) of this section--

**(1)** the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;  and

**(2)** the stay of any other act under subsection (a) of this section continues until the earliest of--

**(A)** the time the case is closed;

**(B)** the time the case is dismissed;  or

**(C)** if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

**(d)** On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--

**(1)** for cause, including the lack of adequate protection of an interest in property of such party in interest;

**(2)** with respect to a stay of an act against property under subsection (a) of this section, if--

**(A)** the debtor does not have an equity in such property;  and

**(B)** such property is not necessary to an effective reorganization;  or

**(3)** with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period)--

    **(A)** the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time;  or

    **(B)** the debtor has commenced monthly payments to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien), which payments are in an amount equal to interest at a current fair market rate on the value of the creditor's interest in the real estate.

**(e)** Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section.  A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section.  The court shall order such stay continued in effect pending the conclusion of the final hearing under subsection (d) of this section if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing.  If the hearing under this subsection is a preliminary hearing, then such final hearing shall be concluded not later than thirty days after the conclusion of such preliminary hearing, unless the 30-day period is extended with the consent of the parties in interest or for a specific time which the court finds is required by compelling circumstances.

**(f)** Upon request of a party in interest, the court, with or without a hearing, shall grant such relief from the stay provided under subsection (a) of this section as is necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer such damage before there is an opportunity for notice and a hearing under subsection (d) or (e) of this section.

**(g)** In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section--

    **(1)** the party requesting such relief has the burden of proof on the issue of the debtor's equity in property;  and

    **(2)** the party opposing such relief has the burden of proof on all other issues.

**(h)** An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

## 11 U.S.C. § 523. Exceptions to discharge

 (a) A discharge under section 727, 1141, 1228(a), 1228(b), or  1328(b) of this title does not discharge an individual debtor from any debt--

  (1) for a tax or a customs duty--

    (A) of the kind and for the periods specified in section 507(a)(2) or  507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

    (B) with respect to which a return, if required--

      (i) was not filed;  or

      (ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition;  or

    (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax;

  (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

    (B) use of a statement in writing--

      (i) that is materially false;

      (ii) respecting the debtor's or an insider's financial condition;

      (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied;  and

      (iv) that the debtor caused to be made or published with intent to deceive;  or

    (C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $1,225  [FN1] for "luxury goods or services" incurred by an individual debtor on or within 60 days before the order for relief under this title, or cash advances aggregating more than $1,225  [FN1] that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 60 days before the order for relief under this title, are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor;  an extension of consumer credit under an open end credit plan is to be defined for purposes of this subparagraph as it is defined in the Consumer Credit Protection Act;

  (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit--

    (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing;  or

    (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

  (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

**(5)** to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that--

    **(A)** such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State);  or

    **(B)** such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

**(6)** for willful and malicious injury by the debtor to another entity or to the property of another entity;

**(7)** to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty--

    **(A)** relating to a tax of a kind not specified in paragraph (1) of this subsection;  or

    **(B)** imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition;

**(8)** for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

**(9)** for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance;

**(10)** that was or could have been listed or scheduled by the debtor in a prior case concerning the debtor under this title or under the Bankruptcy Act in which the debtor waived discharge, or was denied a discharge under section 727(a)(2), (3), (4), (5), (6), or (7) of this title, or under section 14c(1), (2), (3), (4), (6), or (7) of such Act;

**(11)** provided in any final judgment, unreviewable order, or consent order or decree entered in any court of the United States or of any State, issued by a Federal depository institutions regulatory agency, or contained in any settlement agreement entered into by the debtor, arising from any act of fraud or defalcation while acting in a fiduciary capacity committed with respect to any depository institution or insured credit union;

**(12)** for malicious or reckless failure to fulfill any commitment by the debtor to a Federal depository institutions regulatory agency to maintain the capital of an insured depository institution, except that this paragraph shall not extend any such commitment which would otherwise be terminated due to any act of such agency;  or

**(13)** for any payment of an order of restitution issued under title 18, United States Code;

**(14)** incurred to pay a tax to the United States that would be nondischargeable pursuant to paragraph (1);

**(15)** not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless--

    **(A)** the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business;  or

**(B)** discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

**(16)** for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a dwelling unit that has condominium ownership or in a share of a cooperative housing corporation, but only if such fee or assessment is payable for a period during which--

**(A)** the debtor physically occupied a dwelling unit in the condominium or cooperative project;  or

**(B)** the debtor rented the dwelling unit to a tenant and received payments from the tenant for such period,

but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case;

**(17)** for a fee imposed by a court for the filing of a case, motion, complaint, or appeal, or for other costs and expenses assessed with respect to such filing, regardless of an assertion of poverty by the debtor under section 1915(b) or (f) of title 28, or the debtor's status as a prisoner, as defined in section 1915(h) of title 28;

**(18)** owed under State law to a State or municipality that is--

**(A)** in the nature of support, and

**(B)** enforceable under part D of title IV of the Social Security Act (42 U.S.C. 601 et seq.);  or

**(19)** that--

**(A)** is for--

**(i)** the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws;  or

**(ii)** common law fraud, deceit, or manipulation in connection with the purchase or sale of any security;  and

**(B)** results from--

**(i)** any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

**(ii)** any settlement agreement entered into by the debtor;  or

**(iii)** any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

**(b)** Notwithstanding subsection (a) of this section, a debt that was excepted from discharge under subsection (a)(1), (a)(3), or (a)(8) of this section, under section 17a(1), 17a(3), or 17a(5) of the Bankruptcy Act, under section 439A of the Higher Education Act of 1965, or under section 733(g) of the Public Health Service Act in a prior case concerning the debtor under this title, or under the Bankruptcy Act, is dischargeable in a case under this title unless, by the terms of subsection (a) of this section, such debt is not dischargeable in the case under this title.

**(c)(1)** Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), (6), or (15) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), (6), or (15), as the case may be, of subsection (a) of this section.

**(2)** Paragraph (1) shall not apply in the case of a Federal depository institutions regulatory agency seeking, in its capacity as conservator, receiver, or liquidating agent for an insured depository institution, to recover a debt described in subsection (a)(2), (a)(4), (a)(6), or (a)(11) owed to such institution by an institution-affiliated party unless the receiver, conservator, or liquidating agent was appointed in time to reasonably comply, or for a Federal depository institutions regulatory agency acting in its corporate capacity as a successor to such receiver, conservator, or liquidating agent to reasonably comply, with subsection (a)(3)(B) as a creditor of such institution-affiliated party with respect to such debt.

**(d)** If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

**(e)** Any institution-affiliated party of a  [FN2] insured depository institution shall be considered to be acting in a fiduciary capacity with respect to the purposes of subsection (a)(4) or (11).

[FN1]  Dollar amount as adjusted by the Judicial Conference of the United States.  See Adjustment of Dollar Amounts notes set out under this section and 11 U.S.C.A. §  104.

[FN2]  So in original.  Probably should be "an".

## 11 U.S.C. § 1327. Effect of confirmation

 **(a)** The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

**(b)** Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

**(c)** Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

## 15 U.S.C. § 1635. Right of rescission as to certain transactions

(a) Disclosure of obligor's right to rescind

Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.  The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section.  The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

(b) Return of money or property following rescission

When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission.  Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.  If the creditor has delivered any property to the obligor, the obligor may retain possession of it.  Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value.  Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor.  If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.  The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

(c) Rebuttable presumption of delivery of required disclosures

Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.

(d) Modification and waiver of rights

The Board may, if it finds that such action is necessary in order to permit homeowners to meet bona fide personal financial emergencies, prescribe regulations authorizing the modification or waiver of any rights created under this section to the extent and under the circumstances set forth in those regulations.

(e) Exempted transactions;  reapplication of provisions

This section does not apply to--

   **(1)** a residential mortgage transaction as defined in section 1602(w) of this title;

   **(2)** a transaction which constitutes a refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property;

   **(3)** a transaction in which an agency of a State is the creditor;  or

   **(4)** advances under a preexisting open end credit plan if a security interest has already been retained or acquired

Appendix-10

and such advances are in accordance with a previously established credit limit for such plan.

(f) Time limit for exercise of right

An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor, except that if (1) any agency empowered to enforce the provisions of this subchapter institutes a proceeding to enforce the provisions of this section within three years after the date of consummation of the transaction, (2) such agency finds a violation of this section, and (3) the obligor's right to rescind is based in whole or in part on any matter involved in such proceeding, then the obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the earlier sale of the property, or upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later.

(g) Additional relief

In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.

(h) Limitation on rescission

An obligor shall have no rescission rights arising solely from the form of written notice used by the creditor to inform the obligor of the rights of the obligor under this section, if the creditor provided the obligor the appropriate form of written notice published and adopted by the Board, or a comparable written notice of the rights of the obligor, that was properly completed by the creditor, and otherwise complied with all other requirements of this section regarding notice.

(i) Rescission rights in foreclosure

   (1) In general

Notwithstanding section 1649 of this title, and subject to the time period provided in subsection (f) of this section, in addition to any other right of rescission available under this section for a transaction, after the initiation of any judicial or nonjudicial foreclosure process on the primary dwelling of an obligor securing an extension of credit, the obligor shall have a right to rescind the transaction equivalent to other rescission rights provided by this section, if--

   **(A)** a mortgage broker fee is not included in the finance charge in accordance with the laws and regulations in effect at the time the consumer credit transaction was consummated;  or

   **(B)** the form of notice of rescission for the transaction is not the appropriate form of written notice published and adopted by the Board or a comparable written notice, and otherwise complied with all the requirements of this section regarding notice.

   (2) Tolerance for disclosures

Notwithstanding section 1605(f) of this title, and subject to the time period provided in subsection (f) of this section, for the purposes of exercising any rescission rights after the initiation of any judicial or nonjudicial foreclosure process on the principal dwelling of the obligor securing an extension of credit, the disclosure of the finance charge and other disclosures affected by any finance charge shall be treated as being accurate for purposes of this section if the amount disclosed as the finance charge does not vary from the actual finance charge by more than $35 or is greater than the amount required to be disclosed under this subchapter.

   (3) Right of recoupment under State law

Nothing in this subsection affects a consumer's right of rescission in recoupment under State law.

(4) Applicability

This subsection shall apply to all consumer credit transactions in existence or consummated on or after September 30, 1995.

## 28 U.S.C. § 158. Appeals

(a) The district courts of the United States shall have jurisdiction to hear appeals  [FN1]

(1) from final judgments, orders, and decrees;

(2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title;  and

(3) with leave of the court, from other interlocutory orders and decrees;

and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.  An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

(b)(1) The judicial council of a circuit shall establish a bankruptcy appellate panel service composed of bankruptcy judges of the districts in the circuit who are appointed by the judicial council in accordance with paragraph (3), to hear and determine, with the consent of all the parties, appeals under subsection (a) unless the judicial council finds that--

(A) there are insufficient judicial resources available in the circuit;  or

(B) establishment of such service would result in undue delay or increased cost to parties in cases under title 11.

Not later than 90 days after making the finding, the judicial council shall submit to the Judicial Conference of the United States a report containing the factual basis of such finding.

(2)(A) A judicial council may reconsider, at any time, the finding described in paragraph (1).

(B) On the request of a majority of the district judges in a circuit for which a bankruptcy appellate panel service is established under paragraph (1), made after the expiration of the 1-year period beginning on the date such service is established, the judicial council of the circuit shall determine whether a circumstance specified in subparagraph (A) or (B) of such paragraph exists.

(C) On its own motion, after the expiration of the 3-year period beginning on the date a bankruptcy appellate panel service is established under paragraph (1), the judicial council of the circuit may determine whether a circumstance specified in subparagraph (A) or (B) of such paragraph exists.

(D) If the judicial council finds that either of such circumstances exists, the judicial council may provide for the completion of the appeals then pending before such service and the orderly termination of such service.

(3) Bankruptcy judges appointed under paragraph (1) shall be appointed and may be reappointed under such paragraph.

(4) If authorized by the Judicial Conference of the United States, the judicial councils of 2 or more circuits may establish a joint bankruptcy appellate panel comprised of bankruptcy judges from the districts within the circuits for which such panel is established, to hear and determine, upon the consent of all the parties, appeals under subsection (a) of this section.

(5) An appeal to be heard under this subsection shall be heard by a panel of 3 members of the bankruptcy appellate panel service, except that a member of such service may not hear an appeal originating in the district for which such member is appointed or designated under section 152 of this title.

(6) Appeals may not be heard under this subsection by a panel of the bankruptcy appellate panel service unless the district judges for the district in which the appeals occur, by majority vote, have authorized such service to hear and

determine appeals originating in such district.

**(c)(1)** Subject to subsection (b), each appeal under subsection (a) shall be heard by a 3-judge panel of the bankruptcy appellate panel service established under subsection (b)(1) unless--

   **(A)** the appellant elects at the time of filing the appeal;  or

   **(B)** any other party elects, not later than 30 days after service of notice of the appeal;

to have such appeal heard by the district court.

**(2)** An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules.

**(d)** The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section.

   [FN1]  So in original.

**M.G.L. c. 140D § 10. Security interest in property used as dwelling;  rescission;  liability; application**

 (a) Except as otherwise provided in this section, in the case of any consumer credit transaction, including opening or increasing the credit limit for an open-end-credit plan, in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required by this chapter, whichever is later, by notifying the creditor, in accordance with regulations of the commissioner, of his intention to do so.  The creditor shall clearly and conspicuously disclose, in accordance with regulations of the commissioner, to any obligor in a transaction subject to this section the rights of the obligor under this section.  The creditor shall also provide, in accordance with regulations of the commissioner, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.  No finance or other charge shall begin to accrue on any such transaction until the termination of the rescission period provided for in this section.

(b) When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission.  Within twenty days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.  If the creditor has delivered any property to the obligor, the obligor may retain possession of it.  Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impractical or inequitable, the obligor shall tender its reasonable value.  Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor.  If the creditor does not take possession of the property within twenty days after tender by the obligor, ownership of the property rests in the obligor without obligation on his part to pay for it.  The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

(c) Written acknowledgment of receipt of any disclosures required under this chapter, or any rule or regulation issued thereunder, by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.

(d) The commissioner may, if he finds that such action is necessary in order to permit homeowners to meet bona fide personal financial emergencies, prescribe regulations authorizing the modification or waiver of any rights created under this section to the extent and under the circumstances set forth in those regulations.

(e)(1) This section shall not apply to:

(A) a residential mortgage transaction as defined in section one;

(B) a transaction which constitutes a refinancing or consolidation, with no new advances, of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property;

(C) a transaction in which an agency of the commonwealth or any subdivision thereof, is the creditor;

(D) advances under a preexisting open-end-credit plan if a security interest has already been retained or acquired and such advances are in accordance with a previously established credit limit for such plan.

(f) An obligor's right of rescission shall expire four years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding that the information and forms required under this section or any other disclosures required under this chapter have not been delivered to the obligor, except that if (1) the commissioner institutes a proceeding to enforce the provisions of this section within four years after the date of consummation of the transaction, (2) the commissioner finds a violation of this section, and (3) the obligor's right to

rescind is based in whole or in part on any matter involved in such proceeding, then the obligor's right of rescission shall expire four years after the date of consummation of the transaction or upon the earlier sale of the property, or upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later.

(g) In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section thirty-two not relating to the right to rescind.

(h) An obligor shall have no rescission rights arising solely from the form of written notice used by the creditor to inform the obligor of the rights of the obligor under this section, if the creditor provided the obligor the appropriate form of written notice published and adopted by the commissioner, or a comparable written notice of the rights of the obligor, that was properly completed by the creditor, and otherwise complied with all other requirements of this section regarding notice.

(i)(1) Notwithstanding the provisions of section thirty-five, and subject to the time period provided in subsection (f), in addition to any other right of rescission available under this section for a transaction, after the initiation of any judicial or nonjudicial foreclosure process on the primary dwelling of an obligor securing an extension of credit, the obligor shall have a right to rescind the transaction equivalent to other rescission rights provided by this section, if:

(a) a mortgage broker fee is not included in the finance charge in accordance with the laws and regulations in effect at the time the consumer credit transaction was consummated;

(b) the form of notice of rescission for the transaction is not the appropriate form of written notice published and adopted by the commissioner or a comparable written notice, and otherwise complied with all the requirements of this section regarding notice.

(2) Notwithstanding the provisions of subsection (f) of section four, and subject to the time period provided in subsection (f) of this section, for the purposes of exercising any rescission rights after the initiation of any judicial or nonjudicial foreclosure process on the principal dwelling of the obligor securing an extension of credit, the disclosure of the finance charge and other disclosures affected by any finance charge shall be treated as being accurate for the purposes of this section if the amount disclosed as the finance charge does not vary from the actual finance charge by more than thirty-five dollars or is greater than the amount required to be disclosed under this chapter.

(3) Nothing in this section shall be construed so as to affect a consumer's right of recoupment under the laws of the commonwealth.

(4) The provisions of this subsection shall apply to all consumer credit transactions in existence or consummated on or after September thirtieth, nineteen hundred and ninety-five.

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS (Boston)

_____
|
**Jean Miles,**                         |
     **Appellant**       |
**v.**                                  |
                            |     **Case No. 1:05-cv-10226-WGY**
**Beneficial Massachusetts,**           |
     **Appellee**        |
 |
 |
_____|

## CERTIFICATE OF SERVICE

    I hereby certify that on April 13, 2005, I electronically served the Reply Brief of the Appellant. The following participants have received notice electronically:


Patricia Davis, Esq.
Thomas Carlotto, Esq.
Schechtman Halperin and Savage
86 Weybosset Street
Providence, RI 02903
(401) 272-1403

                                       Jean Miles
                                         By her attorney,


                                       /s/ Kimberly Breger
                                       Kimberly Breger, Esq.
                                       BBO# 600925
                                       Legal Services Center
                                       of Harvard Law School
                                       122 Boylston Street
                                       Jamaica Plain, MA   02130
                                       (617) 390-2694